# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **GLEN W. DUCOTE,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civ.Act.No. 07-374-GMS |
| ) | |
| **ELIZABETH BURRIS**, Acting Warden ) | |
| and **JOSEPH R. BIDEN III**, Attorney ) | |
| General for the State of Delaware ) | |
| ) | |
| Respondents.[1] ) | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

On January 15, 2004, a Delaware Superior Court jury convicted Glen Ducote of attempted first degree murder, first degree kidnapping, possession of a deadly weapon during the commission of a felony and possession of a deadly weapon by a person prohibited. Ducote was subsequently declared an habitual offender and, on March 19, 2004, Ducote was sentenced to life imprisonment. On May 18, 2005, the Delaware Supreme Court affirmed Ducote's convictions and sentences on direct appeal. *See Ducote v. State*, 2005 Del. LEXIS 200 (Del. May 18, 2005).

On June 6, 2006, Ducote moved for postconviction relief in Superior Court. The Superior Court denied Ducote's motion on December 29, 2006. *See State v. Ducote*, 2006 Del. Super. LEXIS 520 (Dec. 29, 2006). The Delaware Supreme Court affirmed the denial of Ducote's motion for postconviction relief. *See Ducote v. State*, 2007 Del. LEXIS 196 (May 4,

---

[1] *See* Fed.R.Civ.P. 25(d)(1). Attorney General Joseph R. Biden, III, assumed office on January 2, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case. Elizabeth Burris was named Acting Warden, effective September 1, 2007.

2007).  On June 12, 2007, Ducote petitioned this Court for a writ of habeas corpus, alleging

numerous errors in the proceedings leading to his convictions.  This is the respondents' answer.

Facts

(3) The facts adduced at trial are as follows. Theresa Bare was romantically involved with Ducote for four to five years. Bare and Ducote had lived together in various residences in Chester, Pennsylvania, and had purchased a home together. After Bare broke up with Ducote, he continued to telephone her on a daily basis. On May 4, 2003, Bare, who worked as a cleaning woman at the Woodlawn Apartments near Route 141, Wilmington, Delaware, was cleaning a vacant apartment. While getting some cleaning supplies out of her van, Bare was approached by Ducote, who punched her in the face and yelled obscenities at her. Ducote then pulled a steak knife out of the pocket of his sweatshirt and stabbed her in the back and legs. Ducote threatened to kill Bare unless she told him the address of the woman she had stayed with after their break-up. During the course of the attack, Ducote stabbed Bare multiple times and knocked her down repeatedly as she attempted to stand up. He also repeatedly threatened to kill her.

(4) Following the attack, Ducote bound and gagged Bare with some of her cleaning rags, put her in the van and drove out of the apartment complex toward Route 141. As Ducote stopped and waited for oncoming traffic to pass, Bare managed to reach a door handle and jump out of the van. As the van started moving again, one of the rags got caught on the outside door latch, forcing Bare to run alongside the van. With full knowledge of Bare's predicament, Ducote drove faster and faster. Finally, Bare fell under the van, resulting in injuries to her chest, leg and hand. She managed to run to a nearby residence, where the occupant called 911.

(5) Bare was transported to Christiana Hospital by paramedics. Her heartbeat and blood pressure were alarmingly low and a chest tube needed to be inserted for a collapsed lung. She had surgery to stop her internal bleeding and to repair a tear in her spleen. Doctors also determined that Bare had suffered a broken wrist, a broken ankle and a broken shoulder. She also sustained lacerations and bruising to her face, neck and hand.

(6) After Bare finished her testimony concerning the attack and left the witness stand, she and a social worker employed by the New Castle County police as a victim assistant hugged each other.

No words were spoken by either Bare or the social worker at the time of the hug. After the jury had left the courtroom, the judge called the victim assistant back into the courtroom and strongly admonished her regarding the incident. At trial the following day, Ducote's public defender moved for a mistrial or, in the event the judge was unwilling to grant a mistrial, requested that a curative instruction be given to the jury. The judge denied the motion for a mistrial, but agreed to give a curative instruction.

(7) When the jury returned to the courtroom prior to counsel's closing arguments, the judge told the jury that it had been inappropriate for Bare and the social worker to hug each other in the courtroom, but that it was human nature to do so. He also stated that the incident should have no bearing on their decision in the case and that they should base their verdict solely on the evidence presented. In addition, prior to delivering the regular jury instructions, the judge reiterated his comment that the jury should rely solely and exclusively on the evidence in the case in reaching a decision, and should not permit passion, prejudice, bias or sympathy to influence them in any manner whatsoever

*Ducote v. State*, 2005 Del. LEXIS 200, at *2-6 (Del. May 18, 2005) (footnote omitted).

### Discussion

In his petition, Ducote claims that his convictions should be overturned for several reasons.. First, Ducote claims that the Superior Court erred by failing "to declare a mistrial due to jurors seeing victim being held by victim rights counsel." (D.I. 1 at 6). Ducote also argues that the trial court abused its discretion by "hearing [Ducote's] motion for dismissal of counsel before trial," (D.I. 1 at 9, and by " sentencing [Ducote] to life (natural life) under [11 Del. C. §] 4214A [which] is years. 4214-B is natural life." (D.I 1 at 11). Ducote also makes several claims that his trial counsel was ineffective: by failing "to brief any of the arguable issues presented by appeal," (D.I. 1 at 8);  by failing "to present defense" and "properly question State's witnesses and failed to call any witnesses for the defense or present any defense whatsoever," (D.I. 1 at 11a); by failing to "investigate petitioner's case," (D.I. at 11a); by failing to "properly conduct jury voir dire or request that the court to strike jury penal [sic] members who were biased in

3

favor of the State or the State's witnesses." (D.I. 1 at 11a).    Finally, Ducote incorporates all

claims that were raised in his direct appeal. *See* D.I.1 at 11a.

Although the claims are timely[2] and exhausted,[3] Ducote is not entitled to federal habeas

relief because he has not demonstrated that the Delaware courts' resolution of his particular

claims

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

---

[2] Ducote's conviction became final on August 8, 2005 when the period during which he could
have petitioned the United States Supreme Court for a writ of certiorari expired. Ducote,
therefore, had until August 8, 2006 to file his petition without running afoul of § 2244(d)(1)'s
one-year limitation. By the time Ducote petitioned the Delaware Superior Court for
postconviction relief on June 6, 2006, 302 days had run. His state postconviction proceedings, of
course, tolled the limitations period of § 2244(d)(1). The Delaware Supreme Court eventually
denied Ducote's appeal form the denial of his motion for postconviction relief on May 4, 2007.
Ducote then filed his petition for federal habeas relief on June 12, 2007. By respondents'
calculations then, a total of 341 days had expired between the date when Ducote's conviction
became final and the date he filed his federal petition.

[3] In his direct appeal, Ducote claimed:

> a) the trial judge deprived him of a fair trial by refusing to declare a mistrial after
> the jury witnesses the victim and a victim's rights counselor hugging each other;
> b) the trial judge imposed a sentence that violates the Eighth Amendment's
> prohibition against cruel and unusual punishments; c) he was deprived of his right
> to counsel on his direct appeal because he had meritorious claims that his public
> defender did not believe had merit; and d) his public defender provided
> ineffective assistance by failing to put on a defense at trial.

*Ducote*, 2005 Del. LEXIS 200, at *2. Ducote also presented three claims of ineffective
assistance of counsel in his appeal from the Superior Court's denial of Ducote's motion for
postconviction relief: "Ducote claims that his counsel provided ineffective assistance by a)
failing to present a defense; b) failing to investigate; and c) failing to conduct a proper jury voir
dire." *Ducote*, 2007 Del. LEXIS 196, at *2.

28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hameen v. State of Delaware*, 212 F.3d 226, 235 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 196-97 (3d Cir. 2000); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir. 1999) *(en banc)* (determining the standard of review governing petitions for a writ of habeas corpus under revised § 2254(d)). Thus, under revised § 2254, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002); *Matteo*, 171 F.3d at 885; *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434 (D. Del. 1998). Moreover, factual determinations by state trial and appellate courts are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. *See* §§ 2254(d)(2), (e)(1). *See also Williams,* 529 U.S. at 402-13; *Affinito v. Hendricks,* 366 F.3d 252, 256-57 (3d Cir. 2004); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

*Ground One: Denial of Motion for Mistrial*

First, Ducote claims that the Superior Court erred by failing to grant a mistrial when a victims' rights counselor hugged a witness following the witness' testimony. Ducote presented this particular claim to the Delaware Supreme Court in his direct appeal, thereby exhausting state court remedies. The Delaware Supreme Court found that the emotional display was, in fact, improper but that the Superior Court judge had properly denied Ducote's motion for a mistrial. Specifically, the Supreme Court noted that

> the inappropriate behavior occurred only once and when the jury
> was leaving the courtroom. Immediately after the incident, the

judge strongly admonished the social worker not to engage in any
such behavior in the future. He also gave the jury two specific
cautionary instructions with respect to the incident[,] one the next
morning and the other immediately prior to reading the regular jury
instructions. There is little chance that the jury would have been
misled or prejudiced in such circumstances. Finally, this was not a
close case. The evidence against Ducote was overwhelming.

*Ducote*, 2005 Del. LEXIS 200, at *6-7.

Ducote is not entitled to federal habeas relief on the basis of this claim. As the United

States Supreme Court has recently reiterated, "certain courtroom practices are so inherently

prejudicial that they deprive the defendant of a fair trial." *Carey v. Musladin,* 127 S. Ct. 649,

653 (2006) (*citing Holbrook v. Flynn*, 475 U.S. 560, 570 (1986); *Estelle v. Williams*, 425 U.S.

502, 505 (1976)). In the context of government-sponsored conduct, the Supreme Court has

indicated that the question is "whether an unacceptable risk is presented of impermissible factors

coming into play." *Musladin*, 127 S. Ct. at 563 (*citing Flynn*, 475 U.S. at 570; *Williams*, 425

U.S. at 505). If such a risk is presented, or if a particular practice is inherently prejudicial, then

the conduct "must be justified by an 'essential state' policy or interest." *Musladin*, 127 S. Ct. at

653 (*citing Flynn*, 475 U.S. at 568-69; *Williams*, 425 U.S. at 505). If a petition is based not on

government sponsored conduct, but rather the actions of a courtroom spectator, then "the effect

on a defendant's fair-trial rights of the spectator conduct . . . is an open question in [Supreme

Court] jurisprudence," and a petitioner is not entitled to federal habeas relief. *Musladin*, 127 S.

Ct. at 653. *See id.* at 654 (" . . . we have never applied [*Williams* and *Flynn*] to spectators'

conduct.").

Ducote's situation does not implicate the *Flynn/Williams* standard because the event

about which Ducote complains was not state sponsored. *Williams* resolved the question of

"whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is

6

denied due process or equal protection of the law." 425 U.S at 502. The Court determined that compelling a defendant to stand trial while dressed in clearly-identified prison garb does, in fact, undermine a defendant's right to due process. *See id.* at 512 ("the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes."). In *Flynn,* the Court addressed the question of "whether a criminal defendant was denied his constitutional right to a fair trial when, at his trial with five codefendants, the customary courtroom security force was supplemented by four uniformed state troopers sitting in the first row of the spectators' section." 475 U.S. at 562. The Court ultimately found no unacceptable risk of prejudice in the officers' presence. *Id.* at 571.

In Ducote's case, there was no element of the type of compulsion found unconstitutional in *Williams.* Nor was the fact that the social worker was identified as a state employee[4] sufficient to transfer the social worker's individual conduct into a state sponsored practice. Accordingly, *Flynn* and *Williams* is inapposite and the appropriate standard is precisely the one the United States Supreme Court left unresolved in *Musladin,* i.e., "the effect on a defendant's fair-trial rights of the spectator conduct to which [Ducote] objects." 127 S. Ct. at 653. Accordingly, then, there simply is "no clearly established Federal law, as determined by the Supreme Court of the United States" to apply to Ducote's federal petition. 28 U.S.C. § 2254(d)(1). *See Musladin*, 127 S. Ct. at 653 ("This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial.") (footnote omitted) (emphasis added). Given the absence of applicable United States

---

[4] In instructing the jury to disregard the emotional display, the trial judge briefly identified the social worker as a "woman [who] happens to be part of the victim assistance program that occurs both by the police and by the Attorney General's Office." Tr. 11 (01/15/2004).

Supreme Court precedent, then, there is no basis for the granting of federal habeas relief. *See*

*Johnson v. Carroll*, 369 F.3d 253, 259 (3d Cir. 2004).

In any event, assuming *arguendo*, that the social worker's conduct was "state sponsored,"

Ducote is still not entitled to relief because the conduct was "not so inherently prejudicial that it

denied [him] of a fair trial." *Musladin*, 127 S. Ct. at 563 (*citing Flynn*, 475 U.S. at 570;

*Williams*, 425 U.S. at 505). Indeed, the Delaware Supreme Court specifically noted that "[t]here

is little chance that the jury would have been mislead or prejudiced in [Ducote's case]. . . . this

was not a close case. The evidence against Ducote was overwhelming." *Ducote*, 2005 Del.

LEXIS 200, at \*7. This holding is presumed correct and Ducote has offered nothing to rebut that

presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Accordingly, Ducote's claim must be

denied.

*Grounds Two, Five, Six and Seven: Ineffective Assistance of Counsel*

Ducote also has included several allegations of ineffective assistance of counsel in his

petition for writ of habeas corpus. Ducote's second claim alleges that counsel's failure to brief

any of the arguable issues presented by appeal was unreasonable. *See* D.I. 1 at 8. This claim,

however, is unexhausted because Ducote did not fairly present it to the Delaware Supreme Court.

In his direct appeal, Ducote requested and was granted permission to proceed *pro se*. Ducote

then argued, on direct appeal, that his public defender was ineffective because he did not raise

meritorious issues, which forced Ducote to file his own brief instead. *See* Op. Brf. in No. 118,

2004. Consistent with the court's jurisprudence, the Delaware Supreme Court declined review of

Ducote's claim. *See Desmond v. State*, 654 A.2d 821, 829 (Del. 1994); *Wright v. State*, 513 A.2d

1310, 1315 (Del. 1986); *Duross v. State*, 494 A.2d 1265, 1269 (Del. 1985). Ducote did not

include this particular claim of ineffectiveness in the appeal from the denial of his motion for

8

postconviction relief. Thus, Ducote failed to fairly present this particular claim of ineffective assistance of counsel to the Delaware Supreme Court. *See, e.g., Jackson v. Carroll*, 2004 U.S. Dist. LEXIS 21041, *9 (D. Del. Aug. 31, 2004) ("Fair presentation also requires that the claim be raised in a procedural context in which the state courts can consider it on the merits.") (*citing Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Accordingly, the claim is unexhausted.

Of course, Ducote may be excused from the exhaustion requirement if no state court remedies are available. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Castille v. Peoples*, 489 U.S. 346, 351-52 (1989). Ducote did not raise this claim in his motion for postconviction relief. Any subsequent attempt to present this claim to the Delaware courts would be barred under Delaware Superior Court Criminal Rule 61. Specifically, Ducote would be procedurally barred from raising this claim in a second state postconviction motion under Del. Super. Ct. Crim. R. 61(i)(2) because he failed to raise the issue in his first motion for postconviction relief. Given his inability to present this matter to the Delaware courts, however, Ducote is excused from satisfying the exhaustion requirement on his claim that his public defender was ineffective by failing to include meritorious claims in his direct appeal. *See Lawrie v. Snyder*, 9 F. Supp.2d 428, 454 (D. Del. 1998).

Nevertheless, Ducote has procedurally defaulted this claim and federal habeas review is inappropriate unless Ducote establishes cause for his procedural default in the state courts and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992); *Dawson v. Snyder*, 988 F. Supp. 788, 802-03 (D. Del. 1997); *Johnson v. Ellingsworth*, 783 F. Supp. 215, 218-21 (D. Del. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493

9

(1991); *Murray v. Carrier*, 477 U.S 478, 487 (1986); *Dawson*, 988 F. Supp. at 788. To establish prejudice under the cause and prejudice standard, a petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *Dawson*, 988 F. Supp. at 804-05. Ducote has failed to explain why he failed to include in his motion for postconviction relief his claim that counsel was ineffective for failing to include several meritorious claims in his direct appeal. In any event, Ducote specifically requested that he be allowed to proceed *pro se* in his direct appeal. After an evidentiary hearing to determine whether Ducote had knowingly and voluntarily waived his right to counsel on direct appeal, the Delaware Supreme Court issued an order permitting Ducote to proceed *pro se* in his direct appeal. *See Ducote*, 2005 Del. LEXIS 200, at*2 n.2. Because Ducote was permitted to argue his own appeal, he can hardly claim that counsel was ineffective for failing to present several claims in that proceeding. *See Faretta v. California*, 422 U.S. 806, 834-35 (1975). Accordingly, Ducote has not demonstrated cause for his default and, therefore, the claim should be denied.

Ducote has included several other allegations in his federal petition. Ducote's fifth claim charges that counsel failed to properly question the prosecution's witnesses and that counsel unreasonably failed to call any witnesses, *see* D.I 1 at 11a; Ducote's sixth claim alleges that counsel failed to investigate Ducote's case, *see* D.I. 1 at 11a; and finally, Ducote concludes that counsel was ineffective because he failed to properly conduct *voir dire*, *see* D.I. 1 at 11a. Ducote presented these claims to the Delaware Supreme Court in the appeal from the Superior Court's denial of Ducote's motion for postconviction relief. *See Ducote*, 2007 Del. LEXIS 196, at *2. Accordingly, the claims are exhausted.

10

Nonetheless, Ducote is not entitled to relief because the Delaware Supreme Court's resolution of Ducote's claims did not result in an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). With each of his allegations, Ducote failed to provide any details or to allege any prejudice attributable to counsel's perceived inadequacy. As such, the Delaware Supreme Court denied relief, finding that the conclusory allegations of ineffective assistance of counsel were insufficient to carry his burden under *Strickland*. *See Ducote*, 2007 Del. LEXIS 196, at *2-3 ("Ducote has failed to support his claims of error on the part of his counsel with specific facts. He also has failed to demonstrate that errors on the part of his counsel resulted in prejudice to him. We, therefore, find no merit to Ducote's claims of ineffective assistance of counsel."). The Delaware Supreme Court's resolution of Ducote's claims of ineffective assistance of counsel was consistent with United States Supreme Court precedent. Indeed, *Strickland* specifically places the onus on a defendant alleging ineffective assistance to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690. Moreover, *Strickland* requires that a defendant actually prove prejudice. *See id.* at 693 (""actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."). Because Ducote failed either to provide any context for his allegations of counsel's ineffectiveness or to allege (let alone affirmatively prove) any prejudice as a result, the Delaware courts properly denied Ducote relief. *See id.* at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

*Ground Three: Motion to Dismiss Counsel*

Before trial, Ducote filed a motion "to dismiss current counsel and for court to appoint

new counsel" on December 3, 2003. *See* Dkt. Item 11. The Superior Court judge denied the

motion on January 7, 2004. *See* Dkt. Item 14. Ducote's third claim alleges that the trial court

erroneously decided Ducote's motion to dismiss his counsel before trial. *See* D.I. 1 at 9. Ducote

does not explain how the state court's consideration of his motion entitles him to federal habeas

relief. Indeed, in his direct appeal to the Delaware Supreme Court, Ducote argued that "the trial

court failed to rule on the motion or even consider the motion for the record thereby forcing

appellant to trial without [the] benefit of a[n] advocate to support his defense." Op. Brf. in No.

118, 2004. The Delaware Supreme Court interpreted Ducote's claim as one alleging ineffective

assistance of counsel, and declined to consider the matter on direct appeal. *See Ducote*, 2005

Del. LEXIS 200, at *9 ("Ducote's final two claims are, fundamentally, that his counsel provided

ineffective assistance both at trial and on appeal.") (citations omitted). Ducote did not present

this particular claim of ineffective assistance of counsel in his subsequent motion for

postconviction relief. Accordingly, Ducote has not exhausted this particular claim. *See, e.g.,*

*Jackson v. Carroll*, 2004 U.S. Dist. LEXIS 21041, *9 (D. Del. Aug. 31, 2004) ("Fair presentation

also requires that the claim be raised in a procedural context in which the state courts can

consider it on the merits.") (*citing Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

If there are no state court remedies available, then Ducote is excused from the exhaustion

requirement. Because he did not include this particular claim in his motion for postconviction

relief, any attempt to present this issue would be procedurally barred under Superior Court

Criminal Rule 61(i)(2). Accordingly, Ducote is excused from the exhaustion requirement.

Nonetheless, Ducote's claim is procedurally defaulted and consideration is only appropriate if

Ducote has demonstrated cause and prejudice excusing the default. *See Coleman*, 501 U.S.at

750-51; *Caswell*, 953 F.2d at 861-62; *Dawson*, 988 F. Supp. at 802-03; *Ellingsworth*, 783 F.

Supp. at 218-21. Ducote has not demonstrated "some objective factor external to the defense"

precluded his compliance with state procedural rules. *McCleskey*, 499 U.S. at 493; *Carrier*, 477

U.S. at 487 (1986); *Dawson*, 988 F. Supp. at 788. Indeed, given the fact that Ducote attempted

to raise this particular claim in the context of his direct appeal, he is hard-pressed to credibly

claim some impediment to reasserting it in his motion for postconviction relief. *See Bailey v.*

*Kearney*, 1997 U.S. Dist. LEXIS 8038, *8-10 (D. Del. 1997). Because Carter has not articulated

any basis in his petition to establish cause for failing to present his claims to the Delaware

Supreme Court, those claims can be dismissed without any consideration of actual prejudice.

*See Lawrie v. Snyder*, 9 F. Supp.2d 428, 452 (D. Del. 1998) (*citing Presnell v. Kemp*, 835 F.2d

1567, 1589 n. 29 (11th Cir. 1988); *Carter v. Neal*, 910 F. Supp. 143, 151 (D. Del. 1995)).

*Ground Four: Habitual Offender Sentence*

Ducote's fourth claim alleges that he was improperly sentenced as an habitual offender.

*See* D.I. 1 at 11. The entirety of Ducote's claim alleges that "Superior Court abused its discretion

in sentencing Appellant to life (natural life) under 4214 A witch is years. 42414-B is natural

Life. Appellants prior felonys are (2) non violant (2) violant." D.I. 1 at 11 (spelling as in

original). Relief is unavailable to Ducote on the basis of this claim. As this Court recently

noted, "[a] federal court can only review a state sentence that is alleged to violate a separate

constitutional limitation." *Mayfield v. Carroll*, 2005 U.S. Dist. LEXIS 24137, *12 (D. Del.

2005) (*citing Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984)).[5] Here,

---

[5] At the same time, this Court indicated, that "'the severity of the defendant's sentence alone
constitutes no ground for [habeas] relief,' provided the sentence is within statutory limits."
*Mayfield*, 2005 U.S. Dist. LEXIS 24137, at *12 (*quoting Jackson v. Myers*, 374 F.2d 707, 711

Ducote's claim that the Superior Court judge abused his discretion in sentencing him to a life sentence is based solely on state law; accordingly, it is not cognizable on federal habeas review. *See Mayfield*, 2005 U.S. Dist. LEXIS 24137, at *12 (*citing Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). *See also Fisher v. Carroll*, 375 F. Supp. 2d 385, 391 (D. Del. 2005) ("It is well-settled that a federal court may consider a habeas petition filed by a state prisoner only 'on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.' Claims based on errors of state law are not cognizable on federal habeas review, and a federal habeas court cannot re-examine state court determinations on state law issues.") (*quoting* 28 U.S.C. § 2254(a); *citing Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Phillips*, 455 U.S. 209, 211 (1982); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Riley v. Taylor*, 277 F.3d 261, 310 n.8 (3d Cir. 2001)). Accordingly, the claim presents no basis for federal relief and should be denied accordingly.

---

n.11 (3d Cir. 1967); *citing Townsend v. Burke*, 334 U.S. 736, 741 (1948)). Ducote has made no allegation in his federal petition that his sentence was severe; instead, he focuses solely on his perception that he was erroneously sentenced to life imprisonment under 11 Del. C. § 4214(a). This perception, however, is incorrect. § 4214(a) specifically provides that if the felony for which the State is seeking to declare a defendant an habitual offender is a title 11 violent felony (as defined in 11 Del. C. § 4201(c)), then the court is obligated to impose the statutory maximum sentence that could be imposed for the underlying substantive offense. First degree murder, and attempted first degree murder, are violent felonies under § 4201(c). By virtue of 11 Del. C. § 4205(b), the statutory maximum sentence for attempted murder is life imprisonment. Accordingly, by operation of § 4214(a), once Ducote was declared an habitual offender on the attempted murder charge, the Superior Court was obligated to impose a sentence of life imprisonment. Ducote's sentence then is within limits and provides no basis for relief here.

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Ducote's trial and sentencing proceedings have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

For the foregoing reasons, the petition for writ of habeas corpus should be dismissed without further proceedings.

Kevin M. Carroll
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4836
Kevin.Carroll@state.de.us

Dated: November 16, 2007

15

LEXSEE



Positive
As of: Nov 16, 2007

**GLEN W. DUCOTE, Defendant Below-Appellant, v. STATE OF DELAWARE, Plaintiff Below-Appellee.**

**No. 118, 2004**

**SUPREME COURT OF DELAWARE**

**2005 Del. LEXIS 200**

**April 1, 2005, Submitted**
**May 18, 2005, Decided**

**NOTICE:**

[*1]   THIS OPINION HAS NOT BEEN RE-
LEASED FOR PUBLICATION IN THE PERMANENT
LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT
TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** Post-conviction relief de-
nied at State v. Ducote, 2006 Del. Super. LEXIS 520
(Del. Super. Ct., Dec. 29, 2006)

**PRIOR HISTORY:**     Superior Court of the State of
Delaware, in and for New Castle County. Cr. A. Nos.
IN03-05-0577-0579, IN03-05-1800.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant appealed a
judgment by the Superior Court of the State of Delaware,
in and for New Castle County, that found him guilty of
attempted first-degree murder, first-degree kidnapping,
and possession of a deadly weapon during the commis-
sion of a felony; defendant claimed, inter alia, that the
trial court failed to declare a mistrial after the jury wit-
nessed the victim and a victims' rights counselor hugging
each other.

**OVERVIEW:** After the victim broke up with defendant,
he attacked her, bound and gagged her, put her in a van,
and drove away. When the victim jumped out of the van,
one of the rags used to tie her got caught on the outside
door latch, forcing her to run alongside the van. With full
knowledge of the victim's predicament, defendant drove

faster and faster. After the victim finished her testimony,
she and a social worker employed by the police as a vic-
tims' rights counselor hugged each other. The judge
called the counselor back into the courtroom and
strongly admonished her about the incident. The judge
denied defendant's motion for a mistrial, but gave two
curative instructions to the jury. The state supreme court
held, inter alia, that under the circumstances and because
the evidence against defendant was overwhelming, there
was no error or abuse of discretion by the judge in deny-
ing defendant's motion for a mistrial.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** mistrial, van, direct appeal, social
worker, courtroom, attempted murder, habitual offender,
cleaning, public defender, ineffective assistance, sen-
tenced, sentence, felony, apartment, display, broken, life
term, unusual punishments, convicted, deprived, murder,
cruel, jury instructions, proceed pro se, threatened to kill,
curative instruction, inappropriate, admonished, preju-
diced, emotional

**LexisNexis(R) Headnotes**

*Civil Procedure > Judicial Officers > Judges > General
Overview*
*Criminal Law & Procedure > Trials > Motions for Mis-
trial*
[HN1]Several factors must be considered in evaluating
whether a display of emotion by a witness necessitates a
mistrial. The first consideration is the nature, persistence,

and frequency of the emotional display. The second consideration is the likelihood that the jury was misled or prejudiced by the emotional display. The third consideration is the closeness of the case. The final consideration is the curative or mitigating action taken by the trial judge.

*Civil Procedure > Appeals > Reviewability > General Overview*
*Criminal Law & Procedure > Counsel > Effective Assistance > Tests*
*Criminal Law & Procedure > Appeals > Reviewability > Preservation for Review > General Overview*
[HN2]It is well established that the Delaware Supreme Court will not consider a claim of ineffective assistance of counsel for the first time on direct appeal.

**JUDGES:** Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

**OPINION BY:** Henry duPont Ridgely

**OPINION**

**ORDER**

This 18th day of May 2005, upon consideration of the briefs on appeal and the record below, it appears to the Court that:

(1) On January 15, 2004, the defendant-appellant, Glen W. Ducote, was found guilty by a Superior Court jury of Attempted Murder in the First Degree, Kidnapping in the First Degree and Possession of a Deadly Weapon During the Commission of a Felony. In a separate proceeding, Ducote also was convicted of Possession of a Deadly Weapon by a Person Prohibited. On March 19, 2004, Ducote was declared a habitual offender. [1] He was sentenced to life in prison on the attempted murder conviction and, on the other convictions, was sentenced to a total of 5 years incarceration at Level V, to be suspended after 4 years for 1 year at Level IV. This is Ducote's direct appeal. [2]

1  Del. Code Ann. tit. 11, § 4214(a).

[*2]

2  Following a hearing in the Superior Court, this Court issued an Order on October 4, 2004, permitting Ducote to proceed pro se in this direct appeal.

(2) Ducote raises four issues for this Court's consideration. He claims that: a) the trial judge deprived him of a fair trial by refusing to declare a mistrial after the jury witnessed the victim and a victims' rights counselor hugging each other; b) the trial judge imposed a sentence that violates the Eighth Amendment's prohibition against cruel and unusual punishments; c) he was deprived of his right to counsel on his direct appeal because he had meritorious claims that his public defender did not believe had merit; [3] and d) his public defender provided ineffective assistance by failing to put on a defense at trial.

3  According to Ducote, this is why he was forced to file a motion to proceed pro se.

(3) The facts adduced at trial are as follows. Theresa Bare was romantically [*3] involved with Ducote for four to five years. Bare and Ducote had lived together in various residences in Chester, Pennsylvania, and had purchased a home together. After Bare broke up with Ducote, he continued to telephone her on a daily basis. On May 4, 2003, Bare, who worked as a cleaning woman at the Woodlawn Apartments near Route 141, Wilmington, Delaware, was cleaning a vacant apartment. While getting some cleaning supplies out of her van, Bare was approached by Ducote, who punched her in the face and yelled obscenities at her. Ducote then pulled a steak knife out of the pocket of his sweatshirt and stabbed her in the back and legs. Ducote threatened to kill Bare unless she told him the address of the woman she had stayed with after their break-up. During the course of the attack, Ducote stabbed Bare multiple times and knocked her down repeatedly as she attempted to stand up. He also repeatedly threatened to kill her.

(4) Following the attack, Ducote bound and gagged Bare with some of her cleaning rags, put her in the van and drove out of the apartment complex toward Route 141. As Ducote stopped and waited for oncoming traffic to pass, Bare managed to reach a door handle and jump [*4] out of the van. As the van started moving again, one of the rags got caught on the outside door latch, forcing Bare to run alongside the van. With full knowledge of Bare's predicament, Ducote drove faster and faster. Finally, Bare fell under the van, resulting in injuries to her chest, leg and hand. She managed to run to a nearby residence, where the occupant called 911.

(5) Bare was transported to Christiana Hospital by paramedics. Her heartbeat and blood pressure were alarmingly low and a chest tube needed to be inserted for a collapsed lung. She had surgery to stop her internal bleeding and to repair a tear in her spleen. Doctors also determined that Bare had suffered a broken wrist, a broken ankle and a broken shoulder. She also sustained lacerations and bruising to her face, neck and hand. [4]

4  Ducote's mother testified that her son told her on the day of the attack that he had hurt Bare badly.

(6) After Bare finished her testimony concerning the attack and left the witness stand, she and a social worker [*5] employed by the New Castle County police as a victim assistant hugged each other. No words were spoken by either Bare or the social worker at the time of the hug. After the jury had left the courtroom, the judge called the victim assistant back into the courtroom and strongly admonished her regarding the incident. At trial the following day, Ducote's public defender moved for a mistrial or, in the event the judge was unwilling to grant a mistrial, requested that a curative instruction be given to the jury. The judge denied the motion for a mistrial, but agreed to give a curative instruction.

(7) When the jury returned to the courtroom prior to counsel's closing arguments, the judge told the jury that it had been inappropriate for Bare and the social worker to hug each other in the courtroom, but that it was human nature to do so. He also stated that the incident should have no bearing on their decision in the case and that they should base their verdict solely on the evidence presented. In addition, prior to delivering the regular jury instructions, the judge reiterated his comment that the jury should rely solely and exclusively on the evidence in the case in reaching a decision, [*6] and should not permit passion, prejudice, bias or sympathy to influence them in any manner whatsoever.

(8) Ducote's first claim is that the judge should have declared a mistrial after Bare and the social worker hugged each other in the presence of the jury. [HN1]Several factors must be considered in evaluating whether a display of emotion by a witness necessitates a mistrial. The first consideration is the nature, persistence and frequency of the emotional display. The second consideration is the likelihood that the jury was misled or prejudiced by the emotional display. The third consideration is the closeness of the case. The final consideration is the curative or mitigating action taken by the trial judge. [5]

> 5   _Taylor v. State, 690 A.2d 933, 935 (Del. 1997)._

(9) In this case, the inappropriate behavior occurred only once and when the jury was leaving the courtroom. Immediately after the incident, the judge strongly admonished the social worker not to engage in any such behavior in the future. [*7] He also gave the jury two specific cautionary instructions with respect to the incident   one the next morning and the other immediately prior to reading the regular jury instructions. There is little chance that the jury would have been misled or prejudiced in such circumstances. Finally, this was not a close case. The evidence against Ducote was overwhelming. In these circumstances, we find no error or abuse of

discretion on the part of the judge in denying Ducote's motion for a mistrial. [6]

> 6   To the extent Ducote challenges his conviction on the ground of insufficiency of the evidence, that challenge, which Ducote presents for the first time in this direct appeal and which we, therefore, review for plain error, also fails. _Barnett v. State, 691 A.2d 614, 618 (Del. 1997); Wainwright v. State, 504 A.2d 1096, 1100 (Del. 1986)._

(10) Ducote next claims that his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishments. There is [*8] no dispute that Ducote was eligible to be sentenced as a habitual offender. At the sentencing hearing, Ducote's counsel acknowledged, and the Superior Court determined on the basis of the record before it, that Ducote had three separate felony convictions and previously had been declared a habitual offender. Because Ducote was convicted of Attempted Murder in the First Degree, which, like Murder in the First Degree, [7] is designated as a violent felony, [8] the Superior Court was required under the habitual offender statute to sentence Ducote to a life term for Attempted Murder in the First Degree. [9] Moreover, because Ducote has presented no evidence suggesting that his life term is grossly disproportionate to the crime of attempted murder, [10] we find his Eighth Amendment claim to be without merit.

> 7   Del. Code Ann. tit. 11, § 531 (2001).

> 8   Del. Code Ann. tit. 11, § 4201(c) (2001).

> 9   Del. Code Ann. tit. 11, § 4214(a) (2001).

> 10   _Crosby v. State, 824 A.2d 894, 906, 908 (Del. 2003)._

[*9] (11) Ducote's final two claims are, fundamentally, that his counsel provided ineffective assistance both at trial and on appeal. [HN2]It is well-established that this Court will not consider a claim of ineffective assistance of counsel for the first time on direct appeal. [11] Because Ducote's claims that his counsel rendered ineffective assistance have not been fully addressed by the Superior Court previously, [12] we decline to address them here.

> 11   _Desmond v. State, 654 A.2d 821, 829 (Del. 1994)._

> 12   It appears that, prior to trial, Ducote filed a motion to dismiss his counsel, which was summarily denied by a Superior Court judge other

2005 Del. LEXIS 200, *

than the trial judge. However, Ducote's complaints, as he has presented them here, have not previously been addressed by the Superior Court.

(12) This Court has reviewed the record carefully and has concluded that Ducote's appeal is wholly without merit and devoid of any arguably appealable issue.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior [*10] Court is AFFIRMED.

BY THE COURT:

/s/ Henry duPont Ridgely

Justice

LEXSEE



Positive
As of: Nov 16, 2007

## STATE OF DELAWARE v. GLEN W. DUCOTE, Defendant.

### ID No. 0305001806

### SUPERIOR COURT OF DELAWARE, NEW CASTLE

### 2006 Del. Super. LEXIS 520

### September 20, 2006, Submitted
### December 29, 2006, Decided

**NOTICE:**

[*1]   THIS OPINION HAS NOT BEEN RE-
LEASED FOR PUBLICATION. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** Affirmed by, Motion
granted by Ducote v. State, 2007 Del. LEXIS 196 (Del.,
May 4, 2007)

**PRIOR HISTORY:**   On Defendant's Pro se Motion for
Postconviction Relief.
Ducote v. State, 2005 Del. LEXIS 200 (Del., May 18,
2005)

**DISPOSITION:**   DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** After defendant was con-
victed following a jury trial of attempted murder first
degree, kidnapping first degree, and possession of a
deadly weapon during the commission of a felony, as
well as possession of a deadly weapon by a person pro-
hibited in a separate proceeding, defendant filed a motion
for postconviction relief after his appeal to the state su-
preme court was denied.

**OVERVIEW:** Following a three-day jury trial, defen-
dant was found guilty of attempted murder first degree,
kidnapping first degree, and possession of a deadly
weapon during the commission of a felony. He was also
convicted of possession of a deadly weapon by a person
prohibited in a separate proceeding. Defendant was then

sentenced for those crimes. Thereafter, his appeal to the
state supreme court was denied. Defendant then filed his
motion for postconviction relief and asserted that his trial
counsel was ineffective for three reasons: (1) trial coun-
sel failed to properly cross-examine the State's witnesses
or to present any witnesses on behalf of his defense, (2)
trial counsel failed to investigate defendant's story re-
garding the victim previously harming defendant, and (3)
trial counsel failed to conduct the jury voir dire properly.
The trial court found that the three claims failed to pro-
vide more than mere speculation that did not provide
concrete allegations of a serious deficiency by counsel,
and because defendant failed to show the requisite preju-
dice, there was not a reasonable basis to conclude that
the errors affected the outcome of the trial.

**OUTCOME:** The trial court denied defendant's motion
for post-conviction relief.

**CORE TERMS:** trial counsel, ineffective, counsel
failed, investigate, conclusory, plot, postconviction,
vague, biased, jury voir dire, cross-examination, preju-
diced, defense counsel, cross-examine, specificity, ef-
fected, entirety, juror, shot, trial attorney, ineffective
assistance of counsel, witness's testimony, fair trial,
strong presumption, reasonable probability, claim of in-
effective assistance, citations omitted, substantiated, un-
successful, deficient

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Counsel > Effective As-
sistance > General Overview*

*Criminal Law & Procedure > Counsel > Effective Assistance > Tests*
*Criminal Law & Procedure > Counsel > Effective Assistance > Trials*

[HN1]Every defendant is entitled to counsel to protect his fundamental right to a fair trial pursuant to the Sixth Amendment, and it is a well-established standard that means all defendants are entitled to "reasonably effective assistance." It is a defendant's burden to establish that counsel did not provide reasonably effective assistance at trial, and to do so, he must meet the two-part Strickland test. First, the defendant must show that counsel's performance was deficient. That requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. That requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Criminal Law & Procedure > Counsel > Effective Assistance > General Overview*
*Criminal Law & Procedure > Counsel > Effective Assistance > Trials*
*Evidence > Inferences & Presumptions > Presumptions*

[HN2]Because each case represents new challenges and different facts, counsel must not be restricted in his tactical decisions in conducting a defense. Thus, there is a strong presumption that the actions of trial counsel were trial strategy, and those actions will not be questioned simply because the strategy was unsuccessful. To overcome that strong presumption that the representation was professionally reasonable, a defendant must provide more than mere vague and conclusory claims for the court to examine.

*Criminal Law & Procedure > Counsel > Effective Assistance > General Overview*
*Criminal Law & Procedure > Counsel > Effective Assistance > Trials*

[HN3]A vague and conclusory claim is one which lacks specificity and fails to explain how the defendant was prejudiced by the trial counsel's actions. There must be a reasonable probability that, but for trial counsel's error, the outcome would have been different.

**COUNSEL:** Diane C. Walsh, Deputy Attorney General, Wilmington, Delaware.

Glen W. Ducote, Smyrna, Delaware, Pro se.

**JUDGES:** Judge William C. Carpenter, Jr.

**OPINION BY:** William C. Carpenter, Jr.

**OPINION**

**ORDER**

**CARPENTER, J.**

On this 29<th> day of December, 2006, upon consideration of Defendant's Motion for Postconviction Relief it appears to the Court that:

1. Glen W. Ducote, ("Defendant"), has filed a *pro se* Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 ("Rule 61"), to which the State has responded. At the request of the Court, Defendant's trial attorney, James Brendan O'Neill, Esquire ("Counsel"), filed an affidavit refuting the allegations of ineffective assistance of counsel. For the reasons set forth below, Defendant's Motion for Postconviction Relief is **DENIED.**

2. On January 13, 2004 a three-day jury trial commenced resulting in the Defendant being found guilty of Attempted Murder First Degree, Kidnaping First Degree and Possession of a Deadly Weapon During [*2]  the Commission of a Felony. Mr. Ducote was also convicted of Possession of a Deadly Weapon by a Person Prohibited in a separate proceeding. The Defendant was sentenced for these crimes on March 19, 2004. Thereafter, Mr. Ducote's appeal to the Supreme Court of Delaware was denied, and a mandate was issued on June 8, 2005.

3. The Defendant filed this motion for postconviction relief on June 6, 2006, and both the State and trial counsel have filed responses to Mr. Ducote's motion. Within his motion, the Defendant professes that his trial counsel was ineffective for three reasons: 1) trial counsel failed to properly cross-examine the State's witnesses or to present any witnesses on behalf of his defense; 2) trial counsel failed to investigate the Defendant's story regarding the victim previously harming the Defendant; and 3) trial counsel failed to conduct the jury *voir dire* properly. Upon review of the record, there appears to be no basis to preclude the Defendant's motion pursuant to Rule 61(i), thus the Court addresses each of the Defendant's three assertions below. [1]

1 *Bailey v. State, 588 A.2d 1121, 1127 (Del. 1991); Younger v. State, 580 A.2d 552, 554 (Del. 1990)* (citing *Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989)*).

[*3] 4. [HN1]Every defendant is entitled to counsel to protect his fundamental right to a fair trial pursuant to the Sixth Amendment, [2] and it is a well-established standard that this means all defendants are entitled to "rea-

sonably effective assistance." ³ It is the defendant's burden to establish that counsel did not provide reasonably effective assistance at trial, and to do so, he must meet the two-part test instituted in *Strickland v. Washington:*

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. ⁴

[HN2]Because each case represents new challenges and different facts, counsel must not be restricted in his tactical decisions in conducting a defense. ⁵ Thus, there is a strong presumption that the actions of trial counsel were trial strategy, and those actions will not be questioned [*4] simply because the strategy was unsuccessful. ⁶ To overcome this "strong presumption that the representation was professionally reasonable," a defendant must provide more than mere vague and conclusory claims for the Court to examine. ⁷

2 *Strickland v. Washington,* 466 U.S. 668, 684, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (citations omitted).

3 *Id.* at 683 (citing *Trapnell v. U.S.,* 725 F.2d 149, 151-152 (CA2 1983)).

4 *Id.* at 687.

5 *Strickland,* 466 U.S. at 690. ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.").

6 *State v. Wright,* 653 A.2d 288, 297 (Del. Super. Ct. 1994) ("Although defense counsel's strategy, in retrospect, was unsuccessful, it is not proper for this Court to determine ineffectiveness based on outcome." citing *Lockhart v. Fretwell,* 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993)).

7 *Evans v. State,* 795 A.2d 667 (Del. 2002).

[*5] 5. [HN3]A vague and conclusory claim is one which lacks specificity ⁸ and fails to explain how the defendant was prejudiced by the trial counsel's actions. ⁹ There must be a reasonable probability that, but for trial counsel's error, the outcome would have been different. ¹⁰ Here, Mr. Ducote's three claims fail to provide more than mere speculation. Because these claims are not concrete allegations of a serious deficiency by counsel, and because Mr. Ducote fails to show the requisite prejudice to him, there is no reasonable basis to conclude these alleged errors effected the outcome of the trial. As such, each assertion can be dismissed. ¹¹

8 *State v. St. Louis,* 2004 WL 2153645, at *3 (Del. Super. Ct.) (The court rendered Mr. St. Louis' claim that his trial counsel was ineffective because he failed to interview witnesses, vague and conclusory. The Court indicated that while the defendant provided the court with names of those witnesses which he thought should have been interviewed, the defendant failed to advise the court how the witnesses would have testified, and thus lacked the required specificity.)

[*6]

9 *State v. Dawson,* 681 A.2d 407, 422 (Del. Super. Ct. 1995); *State v. Johnson,* 2001 WL 282831, at *1 (Del. Super. Ct.) ("the Court will not address Rule 61 motions that are conclusory or unsubstantiated.") (citations omitted).

10 *State v. Cubbage,* 2005 WL 914470, at *11 (Del. Super. Ct.) ("Defendant also speculates that if he had been aware of this evidence, then the defense might have had DNA testing done on it to obtain information which might have impeached Wilson. This argument is too speculative to establish a reasonable probability that the outcome would have been different. It fails.") (Citing *Younger v. State,* 580 A.2d at 555, 556)).

11 *Strickland,* 466 U.S. at 694; *Duffy v. State,* 620 A.2d 857 (Del. 1992) (The Court did not address the merits of each claim because the defendant merely listed the errors of trial counsel, and failed to make any concrete or substantive allegations of how he was prejudiced at trial.).

6. Mr. Ducote's first ground for ineffective assistance of [*7] counsel asserts that his trial counsel failed to present a defense or effectively cross-examine the State's witnesses. ¹² While this claim lacks specificity and thereto re fails to overcome the presumption that counsel's actions were reasonable, and further fails to establish any prejudice to the Defendant, it also is simply not accurate. Mr. Ducote's counsel did cross-examine the trial witnesses except for the police officers, whose tes-

timony was limited to a description of the crime scene and the Defendant's post-arrest statement. Since there was no dispute concerning these areas, it was reasonable to not question the officers. Otherwise, Mr. Ducote does not indicate who should have testified on his behalf and what testimony would have been elicited. He does not assert which questions should have been asked or what questions were improperly asked of the State's witnesses, and he fails to establish how the outcome of the trial would have been effected by a different cross-examination of the State's witnesses. This Court cannot speculate as to what witnesses would have said or as to who should have been called to testify, and as a result, this claim is unfounded and therefore dismissed. [*8] [13]

12    Mr. Ducote's first claim is as follows, in its entirety:

Ineffective assistance of counsel - Failure to present defense. Trial counsel failed to properly question state's witnesses and failed to call any witnesses for the defense or present any defense whatsoever.

Def. Mot.

13    *Dawson,* 681 A.2d at 422 ("Dawson has neither explained how the cross-examination was defective nor what additional facts could have been established from further questioning. This alone requires dismissal of the claim. Further, Dawson has not alleged or substantiated how the asserted shortcomings in cross-examination affected the result of the trial.") (citing to *Flamer v. State,* 585 A.2d 736, 755 (Del. Super. Ct. 1990)); see also *White v. State,* 854 A.2d 1159 (Del. 2004) (Because the movant provided no support for his claim that counsel's error in cross-examination prejudiced him, the movant's claim failed.).

7. The second claim Mr. Ducote asserts is that [*9] his trial counsel was ineffective for failure to investigate his claim that the victim was involved in a plot which led to him being shot three times prior to this incident. [14] This claim can also be dismissed as vague and conclusory. [15] First, pursuant to trial counsel's affidavit, Mr. Ducote first brought the story that he was shot through a plot involving the victim to light on the eve of trial, and at that time Mr. Ducote did not provide any witnesses or information to allow trial counsel to investigate. [16] In fact, according to trial counsel's affidavit, Mr. Ducote did not provide any information to counsel to assist in his defense because he was convinced the victim, Ms. Bare,

would not testify against him. [17] Nevertheless, even if counsel was provided the appropriate information to investigate Mr. Ducote's claim, it is not clear to this Court how testimony regarding this alleged plot with the victim would assist Mr. Ducote's defense. In fact, Mr. O'Neill's affidavit and the State's response both indicate any introduction of this plot would have likely hindered the defense by providing a motive for Mr. Ducote to kill Ms. Bare, thereby extinguishing the defense strategy that [*10] Mr. Ducote did not intend to kill her. [18] Mr. Ducote offers nothing to contradict trial counsel's affidavit or the State's response and does not overcome the presumption that the representation was reasonable. [19] As such, this claim is baseless.

14    Mr. Ducote's second claim is as follows, in its entirety:

Ineffective assistance of counsel - Failure to investigate. Trial counsel failed to investigate petitioner's case including the fact that the alleged victim was involved in a plot which led to the petitioner being shot three times prior to charged crime.

Def. Mot.

15    *State v. Johnson,* 2001 WL 282831, at *1 (Del. super. Ct.).

16    O'Neill Aff., at 4. ("Mr. Ducote never provided any details about who, when, where, how or why. Mr. Ducote just claimed there was a plot but could not provide any leads for defense counsel to pursue, especially immediately before the trial was about to start.").

17    *Id.*

18    *Id.;* State Resp., at 2.

19    *State v. White,* 2004 WL 98720, at *2 (Del. Super. Ct.) (Since the defendant only made conclusory allegations that his trial attorney failed to investigate his claims and therefore the defendant lost an opportunity to discredit a witness's testimony, the court dismissed the defendant's claim of ineffective assistance of counsel.), *aff'd,* 854 A.2d 1159 (Del. 2004).

[*11] 8. In addition, Mr. Ducote's claim that trial counsel was ineffective for failure to put on a defense lacks merit. Mr. Ducote again fails to indicate who

should have been called as a witness or what additional evidence should have been entered on his behalf. [20] He further fails to indicate how this additional evidence or testimony would have effected the outcome of the trial. What information provided by the Defendant to assist his counsel was investigated by his counsel and most was unable to be substantiated or helpful. As such, Mr. Ducote's claim fails both prongs of the *Strickland* test, and his second claim is dismissed.

> 20   *St. Louis,* 2004 WL 2153645, at *3 (The defendant provided names of witnesses to the court within his petition and stated that his trial counsel was ineffective for not calling each witness on the defendant's behalf. However, because the defendant failed to state what each witnesses' testimony would have been, the defendant's claim failed as vague and conclusory.).

[*12] 9. Lastly, Mr. Ducote's third claim of ineffective assistance of counsel asserts that counsel improperly conducted the jury *voir dire* leaving jury members who were biased against the Defendant. [21] Mr. Ducote again fails to support his claim or establish that the outcome of the trial would have been different if certain jury members were excluded from the trial through *voir dire* or peremptory challenges. [22] Mr. Ducote does not state which juror he believed was biased nor for what reason he concluded the juror was biased. Mr. Ducote does not elaborate as to how the juror was biased in the State's favor, nor does he provide *voir dire* questions which should have been asked by the Court. The facts are that his counsel provided the Court with suggested *voir dire* that was asked by the Court and his counsel exhausted all

of his peremptory challenges. Because Mr. Ducote fails to show support for his claim to overcome the presumption of reasonableness and because he fails to satisfy the prejudice requirement pursuant to *Strickland,* Mr. Ducote's third claim is also without merit, and is hereby dismissed.

> 21   Mr. Ducote's final claim states as follows, in its entirety:
>
> > Ineffective assistance of counsel - Improper jury voir dire. Trial counsel failed to properly conduct jury voir dire or request the Court to strike jury panel members who were biased in favor of State or State's witnesses
>
> Def. Mot.

[*13]

> 22   *State v. Folks,* 2006 WL 2742315 (Del. Super. Ct.) (Defendant provided no specific evidence to support his claim, and failed to establish any prejudice resulted in the manner the jury was selected. As a result, his claim was denied.).

10. For the foregoing reasons, Mr. Ducote's Motion for Postconviction Relief is hereby denied.

IT IS SO ORDERED.

Judge William C. Carpenter, Jr.

LEXSEE



Analysis
As of: Nov 16, 2007

GLEN W. DUCOTE, Defendant Below-Appellant, v. STATE OF DELAWARE, Plaintiff Below-Appellee.

No. 41, 2007

SUPREME COURT OF DELAWARE

2007 Del. LEXIS 196

March 27, 2007, Submitted
May 4, 2007, Decided

**NOTICE:**

THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**PRIOR HISTORY:** [*1]
Court Below--Superior Court of the State of Delaware in and for New Castle County. Cr. ID No. 0305001806. State v. Ducote, 2006 Del. Super. LEXIS 520 (Del. Super. Ct., Dec. 29, 2006)

**JUDGES:** Before HOLLAND, JACOBS and RIDGELY, Justices.

**OPINION BY:** Jack B. Jacobs

**OPINION**

**ORDER**

This 4th day of May 2007, upon consideration of the appellant's opening brief and the appellee's motion to affirm pursuant to Supreme Court Rule 25(a), it appears to the Court that:

(1) The defendant-appellant, Glen W. Ducote, filed an appeal from the Superior Court's December 29, 2006 order denying his motion for postconviction relief pursuant to Superior Court Criminal Rule 61. The plaintiff-appellee, the State of Delaware, has moved to affirm the Superior Court's judgment on the ground that it is manifest on the face of Ducote's opening brief that the appeal is without merit. We agree and affirm.

(2) In January 2004, Ducote was found guilty by a Superior Court jury of Attempted Murder in the First Degree, Kidnapping in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Possession of a Deadly Weapon By a Person Prohibited. He was sentenced to life imprisonment plus an additional five years at Level V. This Court affirmed Ducote's convictions and sentences on direct appeal. [1]

> 1 Ducote [*2] v. State, Del. Supr., No. 118, 2004, 2005 Del. LEXIS 200, Ridgely, J. (May 18, 2005).

(3) In this appeal, Ducote claims that his counsel provided ineffective assistance by a) failing to present a defense; b) failing to investigate; and c) failing to conduct a proper jury voir dire.

(4) In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness and that, but for his counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different. [2] Although not insurmountable, the Strickland standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." [3] The defendant must make concrete allegations of ineffective assistance, and substantiate them, or risk summary dismissal. [4]

> 2 Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

3    *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

4    *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

(5) Ducote has failed to support his claims of error on the part of his counsel with specific facts. He also has failed to demonstrate that errors on the part [*3] of his counsel resulted in prejudice to him. We, therefore, find no merit to Ducote's claims of ineffective assistance of counsel.

(6) It is manifest on the face of Ducote's opening brief that his appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. [5]

5    On March 27, 2007, Ducote filed a motion to strike the State's motion to affirm, as well as any other motion that might be filed by the State, on the ground that the record was filed by the Prothonotary five days beyond the due date. In the absence of any legal or factual support for Ducote's motion, it is hereby denied.

BY THE COURT:

/s/ Jack B. Jacobs

Justice

LEXSEE



Analysis
As of: Nov 16, 2007

**ROMAYNE O. JACKSON, Petitioner, v. THOMAS CARROLL, Warden, and M. JANE BRADY, Attorney General of the State of Delaware, Respondents.**

**Civil Action No. 03-311-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2004 U.S. Dist. LEXIS 21041**

**August 31, 2004, Decided**

**PRIOR HISTORY:** Jackson v. State, 817 A.2d 804, 2003 Del. LEXIS 78 (Del., 2003)

**DISPOSITION:**   Application for writ of habeas corpus denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** After his probation was revoked, petitioner state inmate was sentenced to a term of imprisonment on several of his original convictions. The inmate applied for a writ of habeas corpus pursuant to 28 U.S.C.S. § 2254, arguing that his violation of parole sentence for a cocaine conviction violated the Equal Protection, Due Process, and Double Jeopardy Clauses.

**OVERVIEW:** The inmate's double jeopardy claim did not warrant federal habeas relief under 28 U.S.C.S. § 2254(d)(1) as the challenged sentence was the result of clerical error and the sentencing court had corrected the sentencing orders to effectuate its original sentencing intent upon discovering the mistake. Thus, the sentence, as corrected, imposed a valid punishment for the cocaine offense. The inmate was not entitled to habeas relief on the due process claim related to the sentencing proceeding because he was represented by counsel at the hearing, he admitted that he had violated his probation, and he did not contend that erroneous information was not disclosed to him or that he was prevented from challenging the allegedly erroneous information at the hearing. The due process and equal protection claims with respect to the five-year cocaine sentence were procedurally barred as the inmate had not presented the claims to the

state supreme court and he failed to demonstrate that an external impediment prevented him from presenting the claims in a postconviction appeal. The court declined to issue a certificate of appealability.

**OUTCOME:** The application for a writ of habeas corpus was denied. The court declined to issue a certificate of appealability.

**CORE TERMS:** sentence, cocaine, sentencing, federal habeas, imprisonment, probation, double jeopardy, sentences imposed, exhausted, robbery, procedurally, equal protection, clerical errors, correction, habeas petition, procedural default, probation officers, certificate, sentenced, corrected, petitioner's claim, state remedies, miscarriage of justice, post-conviction, incarceration, appealability, suspended, aggregate, defaulted, innocence

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview*
[HN1]The Antiterrorism and Effective Death Penalty Act (AEDPA) increases the deference federal courts must give to state court decisions, primarily by imposing procedural requirements and standards for analyzing the merits of a habeas petition. Generally, the AEDPA modifies a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law.

*Criminal Law & Procedure > Habeas Corpus > Custody Requirement > Custody Determinations > Satisfaction of Custody*
*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > Exceptions*
*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview*
[HN2]Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may consider a habeas petition filed by a state prisoner only on the ground that he is in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C.S. § 2254(a). Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C.S. § 2254(b).

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > General Overview*
[HN3]See 28 U.S.C.S. § 2254(b)(1).

*Criminal Law & Procedure > Appeals > Reviewability > Preservation for Review > Constitutional Issues*
*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > General Overview*
*Governments > Courts > Judicial Comity*
[HN4]A federal habeas petitioner shall not be deemed to have exhausted remedies available if he has the right under the law of the state to raise, by any available procedure, the question presented. 28 U.S.C.S. § 2254(c). The exhaustion requirement is based on principles of comity, requiring the petitioner to give state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process. Generally, the petitioner must demonstrate that the habeas claim was fairly presented to the state's highest court, either on direct appeal or in a postconviction proceeding.

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > Satisfaction of Exhaustion*
[HN5]To satisfy the fair presentation requirement, a federal habeas petitioner must have asserted a legal theory and facts to the state courts that are substantially equivalent to those contained in the federal habeas petition. Fair presentation also requires that the claim be raised in a procedural context in which the state courts can consider it on the merits. However, provided that the petitioner did, in fact, fairly present the federal claim to the state's highest court, the exhaustion requirement is satisfied even if the state court did not actually consider or discuss the federal issue.

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > Prerequisites*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice*
[HN6]A federal habeas petitioner's failure to exhaust state remedies will be excused if state procedural rules prevent him from seeking further relief in state courts. Although deemed exhausted, such claims are nonetheless procedurally defaulted. A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
*Criminal Law & Procedure > Habeas Corpus > Appeals > Standards of Review > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview*
[HN7]Once a federal court determines that a claim is exhausted and not procedurally defaulted, it must next determine the appropriate standard for reviewing the habeas claim. If a state court adjudicated the federal habeas claim on the merits, then the federal habeas court can only grant habeas relief when the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C.S. § 2254(d)(1), (2). A state court has adjudicated a claim on the merits for the purposes of 28 U.S.C.S. § 2254(d)(1) if the state court decision finally resolves the parties' claims, with res judicata effect, and is based on the substance of the claim advanced, rather than on a procedural, or other ground. In short, a failure to decide affects the standard of review; a failure to discuss (either at all or to the satisfaction of the habeas petitioner or the federal court) is irrelevant.

*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview*
[HN8]The Antiterrorism and Effective Death Penalty Act requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C.S.

§ 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. This presumption of correctness applies to both explicit and implicit findings of fact.

*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > General Overview*
[HN9]It is not the province of a federal habeas court to reexamine a state court's determination of state law.

*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview*
*Governments > Courts > Judicial Precedents*
[HN10]Where the state court does not expressly analyze the merits of federal habeas petitioner's claim in light of United States Supreme Court precedent, the state court decision will only be contrary to clearly established federal law if the reasoning or result of the state court decision contradicts the governing law set forth in the Supreme Court's cases. To determine whether the state court's decision was an unreasonable application of Supreme Court precedent, the federal habeas court must objectively evaluate the state court decision on the merits, and determine whether the state court reasonably applied Supreme Court precedent to the facts of the petitioner's case. Before reaching either prong, the court must first identify the clearly established Supreme Court precedent governing the petitioner's claim.

*Criminal Law & Procedure > Double Jeopardy > Double Jeopardy Protection > Acquittals*
*Criminal Law & Procedure > Double Jeopardy > Double Jeopardy Protection > Convictions*
*Criminal Law & Procedure > Double Jeopardy > Double Jeopardy Protection > Multiple Punishments*
[HN11]The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.

*Criminal Law & Procedure > Double Jeopardy > Double Jeopardy Protection > Multiple Punishments*
*Criminal Law & Procedure > Sentencing > Alternatives > Probation > Revocation > Due Process*
*Criminal Law & Procedure > Postconviction Proceedings > Parole*
[HN12]It is well-settled that the revocation of parole or probation and the corresponding imposition of confinement does not violate the Double Jeopardy Clause because these criminal sanctions do not involve the in-

crease of a final sentence, and the defendant is aware at the original sentencing that a term of imprisonment later may be imposed. However, the Double Jeopardy Clause prevents a sentencing court from prescribing a greater punishment than that intended by the legislature and it also prevents a court from increasing a valid sentence after a defendant has started serving his punishment.

*Criminal Law & Procedure > Double Jeopardy > Double Jeopardy Protection > Multiple Punishments*
*Criminal Law & Procedure > Sentencing > Corrections, Modifications & Reductions > Illegal Sentences*
[HN13]A court may always correct an illegal sentence to make the sentence conform to the statutory minimum or to the original intent of the sentencing judge without violating the Double Jeopardy Clause. Courts also have the power and duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake.

*Criminal Law & Procedure > Double Jeopardy > Double Jeopardy Protection > General Overview*
*Criminal Law & Procedure > Sentencing > Imposition > Pronouncement*
[HN14]When there is a conflict between a written sentencing judgment and the oral pronouncement of the judgment, the oral pronouncement governs.

*Criminal Law & Procedure > Trials > Examination of Witnesses > Cross-Examination*
*Criminal Law & Procedure > Sentencing > Alternatives > Probation > Revocation > Due Process*
*Evidence > Documentary Evidence > General Overview*
[HN15]It is well-settled that revocation of probation hearings are only subject to the minimum requirements of due process. These requirements include: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to evidence relied on and reasons for revoking probation.

*Civil Procedure > Justiciability > Exhaustion of Remedies > General Overview*
*Civil Procedure > Appeals > Reviewability > Preservation for Review*
*Criminal Law & Procedure > Appeals > Reviewability > Waiver > Waiver Triggers Generally*

2004 U.S. Dist. LEXIS 21041, *

[HN16]In Delaware, the failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim on appeal.

**Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice**

[HN17]For claims that are procedurally defaulted, federal habeas review is foreclosed unless the petitioner establishes cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court refuses to hear the claims.

**Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice**

[HN18]To establish a miscarriage of justice, a federal habeas petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent.

**Criminal Law & Procedure > Habeas Corpus > Appeals > Certificate of Appealability**
**Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Threshold Requirements**

[HN19]A certificate of appealability may only be issued when a federal habeas petitioner makes a substantial showing of the denial of a constitutional right. _28 U.S.C.S. § 2253(c)(2)_. This showing is satisfied when the petitioner demonstrates that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong.

**COUNSEL:** [*1] For Loren C. Meyers, Respondents: Chief of Appeals Division, Delaware Department, Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, Chief Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM OPINION**

August _31_, 2004

Wilmington, Delaware

**ROBINSON,** Chief Judge

**I. INTRODUCTION**

Petitioner Romayne O. Jackson is a Delaware inmate in custody at the Sussex Correctional Institution in Georgetown, Delaware. Currently before the court is petitioner's application for a writ of habeas corpus pursuant to _28 U.S.C. § 2254_. (D.I. 1) For the reasons that follow, the court will dismiss his application.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

In May 1998, a Delaware Superior Court jury convicted petitioner of second degree assault, second degree robbery, two counts of second degree conspiracy, resisting arrest, and felony receipt of stolen property. _See Jackson v. State, 734 A.2d 641 (Del. May 26, 1999)_. In June 1998, petitioner pled guilty to possession of cocaine. He was sentenced to one year imprisonment on the cocaine possession charge, suspended for one year of probation. For the robbery conviction, petitioner was sentenced to five [*2] years imprisonment, suspended after one year, for a total of four years at a halfway house and probation. The aggregate term of imprisonment for these two convictions is six years. [1]

> 1 Neither the state record nor the published state court opinions indicate the sentences imposed for the other four convictions (second degree assault, two counts of second degree conspiracy, resisting arrest, and felony receipt of stolen property). However, petitioner does not challenge these sentences or the VOP sentences imposed with respect to these convictions.

In September 2001, probation officers charged petitioner with committing new criminal offenses, failing to report as instructed, and using controlled substances. In January 2002, the Delaware Superior Court held a violation of probation hearing ("VOP") where, represented by counsel, petitioner admitted the violations. [2] Petitioner's probation officer recommended a total sentence of ten years imprisonment, with sixteen months credit for time served on the robbery sentence. [*3] (D.I. 14, Jan. 10, 2002 Sentencing Transcript, at 7-8, attached to Motion to Affirm in _Jackson v. State, 806 A.2d 164 (Sup. Ct. Del. 2002)_) Petitioner's attorney contended, however, that the probation officer's sentencing recommendation was excessive. After determining that petitioner did violate his probation, the Superior Court revoked his probation for five of his original convictions and sentenced him to a total of seven years imprisonment with credit for sixteen months previously served. [3] _Id._ at 14. The Delaware Supreme Court affirmed this decision. _Jackson v. State, 806 A.2d 164 (Del. Sept. 16, 2002)_.

> 2 Petitioner admitted violating the probation conditions for all of the original six convictions.

3  A total of seven years of imprisonment was imposed for violating the probation conditions for five of the original 1998 convictions. (The sentencing transcript indicates that one violation was discharged). The VOP sentence imposed for the cocaine possession VOP was six months at Level 5, and the VOP sentence imposed for the robbery VOP was five years at Level 5, with credit for sixteen months. (D.I. 14, January 10, 2002 VOP Hearing Transcript, at 13-14) Only the VOP sentences imposed for the cocaine possession and robbery convictions are the subject of petitioner's habeas petition.

[*4] Thereafter, in October 2002, petitioner filed with the Delaware Superior Court a motion to review one of the VOP sentences imposed in January 2002. He contended that the VOP sentence imposed in connection with the cocaine possession charge was incorrect because his original 1998 sentence was for one year of imprisonment, but that the VOP sentence was for five years of imprisonment. The Superior Court denied the motion as time-barred. However, the Delaware court noted that the VOP sentences for the cocaine possession and the second degree robbery had been inadvertently switched in the sentencing orders, and corrected the misnumbered sentencing orders. As a result, petitioner's VOP sentence for the cocaine possession was six months of imprisonment, [4] and the sentence for the second degree robbery was five years of imprisonment (reduced by sixteen months credit for previously served time).

> 4  Petitioner's sentence on his cocaine possession conviction was for one year of imprisonment, whereas the VOP sentence for the cocaine possession was for six months of imprisonment.

[*5] Petitioner appealed, arguing that the five year VOP sentence for his cocaine conviction violated double jeopardy, because his original sentence was only for one year of imprisonment at Level V. The Delaware Supreme Court affirmed the Superior Court's denial of the motion to review the sentence, and denied petitioner's double jeopardy claim as meritless. _Jackson v. State_, 817 A.2d 804, **1 (Del. Feb. 4, 2003).

Thereafter, petitioner filed the habeas application currently before the court, asserting one claim: the VOP sentence for his cocaine conviction (five years at Level 5) violates the equal protection, due process and double jeopardy clauses of the constitution because he was originally sentenced to only one year at Level 5 incarceration, to be suspended for one year at Level 2. (D.I. 1)

Respondents' answer asks the court to dismiss petitioner's double jeopardy claim for failing to satisfy §

2254(d)(1), and to dismiss his due process and equal protection claims as procedurally barred from federal habeas review. (D.I. 12)

Petitioner filed a response to respondents' answer, alleging that: (1) the transcripts do not reflect an inadvertent switching of numbers; [*6] (2) the Department of Correction records indicate that petitioner is still serving a five year sentence for the cocaine VOP; and (3) the probation officer and respondents presented misleading information at the VOP sentencing hearing. (D.I. 16) Petitioner also asks the court to consider a "scenario" where the state is covering up its mistake and correcting a sentence to its benefit. (D.I. 19.)

Petitioner's federal habeas petition is now ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." _Woodford v. Garceau_, 538 U.S. 202, 206, 155 L. Ed. 2d 363, 123 S. Ct. 1398 (2003) (internal citations and quotation marks omitted). [HN1]AEDPA increases the deference federal courts must give to state court decisions, primarily by imposing procedural requirements and standards for analyzing the merits of a habeas petition. _See id._ at 206. Generally, AEDPA "modified a federal habeas court's role in [*7] reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." _Bell v. Cone_, 535 U.S. 685, 693, 152 L. Ed. 2d 914, 122 S. Ct. 1843 (2002).

### B. Exhaustion and Procedural Default

[HN2]Under AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); _O'Sullivan v. Boerckel_, 526 U.S. 838, 842-44, 144 L. Ed. 2d 1, 119 S. Ct. 1728 (1999); _Picard v. Connor_, 404 U.S. 270, 275, 30 L. Ed. 2d 438, 92 S. Ct. 509 (1971). AEDPA states:[HN3]

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court

shall not be granted unless it appears that
--

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective [*8] process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

[HN4]A petitioner "shall not be deemed to have exhausted remedies available . . . if he has the right under the law of the state to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The exhaustion requirement is based on principles of comity, requiring the petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Generally, the petitioner must demonstrate that the habeas claim was "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citations omitted); Coverdale v. Snyder, 2000 U.S. Dist. LEXIS 22192, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

[HN5]To satisfy the fair presentation requirement, the petitioner must [*9] have asserted a legal theory and facts to the state courts that are substantially equivalent to those contained in the federal habeas petition. Coverdale, 2000 U.S. Dist. LEXIS 22192, 2000 WL 1897290, at *2; Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996). Fair presentation also requires that the claim be raised in a procedural context in which the state courts can consider it on the merits. Castille v. Peoples, 489 U.S. 346, 351, 103 L. Ed. 2d 380, 109 S. Ct. 1056 (1989). However, provided that the petitioner did, in fact, fairly present the federal claim to the state's highest court, the exhaustion requirement is satisfied even if the state court did not actually consider or discuss the federal issue. See Swanger v. Zimmerman, 750 F.2d 291, 295 (3d Cir. 1984).

[HN6]A petitioner's failure to exhaust state remedies will be excused if state procedural rules prevent him from seeking further relief in state courts. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); see Teague v. Lane, 489 U.S. 288, 297-98, 103 L. Ed. 2d 334, 109 S. Ct.

1060 (1989). Although deemed exhausted, such claims are nonetheless procedurally defaulted. [*10] Coleman v. Thompson, 501 U.S. 722, 749, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); Lines, 208 F.3d at 160. A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51 (1999); Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992).

## C. Standard of Review Under AEDPA

[HN7]Once a federal court determines that a claim is exhausted and not procedurally defaulted, it must next determine the appropriate standard for reviewing the habeas claim. If a state court adjudicated the federal habeas claim on the merits, then the federal habeas court can only grant habeas relief when the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted [*11] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 412, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). A state court has adjudicated a claim on the merits for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolves the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (internal citations omitted). In short, "a failure to decide affects the standard of review; a failure to discuss (either at all or to the satisfaction of the habeas petitioner or the federal court) is irrelevant." Id.

[HN8]AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254 [*12] (e)(1); Miller-El v. Cockrell, 537 U.S. 322, 341, 154 L. Ed. 2d 931, 123 S. Ct. 1029 (2003) (stating that the clear and convincing

standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

### A. Petitioner's double jeopardy claim does not warrant federal habeas relief under § 2254(d)(1)

Petitioner states "that the court sentenced [him] to 5 years Level 5 incarceration, when the original sentence was 1 year Level 5 suspended for 1 year at Level 2." (D.I. 1.) The court interprets petitioner's double jeopardy claim as a challenge to the imposition of the five year VOP sentence for cocaine possession because it was greater than the original one year sentence imposed in 1998 for the cocaine possession conviction itself. Respondents appear to interpret petitioner's claim as a challenge to the entire VOP proceeding, especially the correction of the sentencing error. [5]

> 5   To the extent petitioner's argument can be interpreted as a challenge to the application of Delaware Superior Court Criminal Rule 36, this claim is not subject to federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-8, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991) [HN9](it is not the province of a federal court to re-examine a state court's determination of state law); *Johnson v. Rosemeyer*, 117 F.3d 104, 109 (1997) ("it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim").

[*13]   Respondents correctly assert that petitioner exhausted state remedies with respect to his double jeopardy claim by presenting it to the Delaware Supreme Court on post-conviction appeal. The Delaware Supreme Court rejected petitioner's double jeopardy claim on the merits. *Jackson*, 817 A.2d 804 (Del. 2003); *see Rompilla*, 355 F.3d at 247 (where adjudication was on the merits despite state court's failure to cite or apply federal law). As such, this court must apply the deferential standard of review contained in § 2254(d)(1) and determine whether the Delaware Supreme Court's decision either was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. 362, 146 L. Ed. 2d 389, 120 S. Ct. 1495; *Werts v. Vaughn*, 228 F.3d 178 (3d Cir. 2000), *cert. denied*, 532 U.S. 980, 149 L. Ed. 2d 483, 121 S. Ct. 1621 (2001) (holding that the Third Circuit's interpretation of § 2254(d)(1) in *Matteo v. Superinten-*

*dent, SCI Albion*, 171 F.3d 877, 880 (3d Cir. 1999) (en banc), is in accord with *Williams*).

[HN10]Where, as here, [*14] the state court does not expressly analyze the merits of petitioner's claim in light of Supreme Court precedent, the state court decision will only be "contrary to" clearly established Federal law if the reasoning or result of the state court decision contradicts the governing law set forth in the Supreme Court's cases. *Early v. Packer*, 537 U.S. 3, 8, 154 L. Ed. 2d 263, 123 S. Ct. 362 (2002) (announcing the standard where a state court does not expressly analyze the merits of petitioner's claim in light of Supreme Court precedent). To determine whether the Delaware Supreme Court's decision was an "unreasonable application" of Supreme Court precedent, this court must objectively evaluate the state court decision on the merits, and determine whether the state court reasonably applied Supreme Court precedent to the facts of petitioner's case. *See Williams*, 529 U.S. at 412-13; *Matteo*, 171 F.3d at 891. Before reaching either prong, the court must first identify the clearly established Supreme Court precedent governing petitioner's claim. *Werts*, 228 F.3d at 197.

[HN11]The Double Jeopardy Clause "protects against three distinct abuses: a second prosecution for [*15] the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Baird*, 63 F.3d 1213, 1215 (3d Cir. 1995). Petitioner's claim invokes the third prohibition: multiple punishments for the same offense.

[HN12]It is well-settled that the revocation of parole or probation and the corresponding imposition of confinement does not violate the Double Jeopardy Clause because "these criminal sanctions do not involve the increase of a final sentence, and . . . defendant is aware at the original sentencing that a term of imprisonment later may be imposed." *Ralston v. Robinson*, 454 U.S. 201, 220 n. 14, 70 L. Ed. 2d 345, 102 S. Ct. 233 (1981) (citing *United States v. DiFrancesco*, 449 U.S. 117, 137, 66 L. Ed. 2d 328, 101 S. Ct. 426 (1980)). However, the Double Jeopardy Clause prevents a sentencing court from prescribing a greater punishment than that intended by the legislature, *Garrett v. United States*, 471 U.S. 773, 780, 85 L. Ed. 2d 764, 105 S. Ct. 2407 (1985), and it also prevents a court from increasing a valid sentence after a defendant has started serving his punishment. *In re Bradley*, 318 U.S. 50, 87 L. Ed. 608, 63 S. Ct. 470 (1943); *Hill v. United States ex rel. Wampler*, 298 U.S. 460, 80 L. Ed. 1283, 56 S. Ct. 760 (1936). [*16]

Nevertheless, [HN13]a court may always correct an illegal sentence to make the sentence conform to the statutory minimum or to the original intent of the sentencing judge without violating the double jeopardy

clause. *Bozza v. United States*, 330 U.S. 160, 91 L. Ed. 818, 67 S. Ct. 645 (1946). "Courts [also] have the power and duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake." *American Trucking Associations, Inc. v. Frisco Transportation Company*, 358 U.S. 133, 145, 3 L. Ed. 2d 172, 79 S. Ct. 170 (1958); *Gagnon v. United States*, 193 U.S. 451, 453, 48 L. Ed. 745, 24 S. Ct. 510, 39 Ct. Cl. 548 (1904). As stated by Justice Brennan in his dissent in *United States v. DiFrancesco*, 449 U.S. 117, 146, 66 L. Ed. 2d 328, 101 S. Ct. 426 n.4 (1980) (joined by Justice White, Justice Marshall, and Justice Stevens), "under my view of the double jeopardy protection against multiple punishments, a sentence may not be increased once a technically correct sentence has been imposed. I would distinguish correction of a technically improper sentence which the Court has always allowed." [HN14]When there is a conflict between a written judgment and the oral pronouncement of the judgment, the oral pronouncement governs. *See Hill v. United States ex rel. Wampler*, 298 U.S. 460, 465, 80 L. Ed. 1283, 56 S. Ct. 760 (1936). [*17]

Applying these principles to petitioner's situation demonstrates that the Delaware Supreme Court's denial of petitioner's double jeopardy claim was not contrary to, or an unreasonable application of, these clearly established Federal laws. The Delaware Supreme Court rejected petitioner's double jeopardy argument because it determined that the five year VOP sentence for the cocaine conviction was the result of an inadvertent clerical error and not a double jeopardy violation. The Delaware Supreme Court also held that the Superior Court's correction of the error was authorized under Delaware Superior Court Criminal Rule 36.

This court has independently reviewed the record and also concludes that the challenged VOP sentence was the result of a clerical error. [6] The VOP sentencing transcript clearly reveals the judge's intent to sentence petitioner to six months imprisonment at Level 5 for his cocaine possession VOP, rather than five years imprisonment at Level 5. The aggregate term of incarceration originally imposed by the VOP judge was seven years, with sixteen months credit for time served. Even with the clerical error, the aggregate term of incarceration remained the same. However, [*18] six different sentencing orders were issued for petitioner's six different violations of his probation, [7] and the criminal action numbers for the cocaine VOP and robbery VOP were switched on the sentencing orders. Once the Superior Court discovered the misnumbering, it corrected the clerical error and imposed the proper sentence. As such, the initial cocaine VOP sentence for five years was not an attempt to impose an additional sentence for the original conviction. Rather, the increased sentence was the result of a clerical

mistake. Upon discovering the mistake, the Superior Court corrected the sentencing orders to effectuate its original sentencing intent. Neither the inadvertent sentencing error, nor the correction of the error, violated the Double Jeopardy Clause.

> 6 Further, to the extent the Delaware Supreme Court's determination (that the misnumbering constituted a clerical error) was a factual determination, this court is required to presume this determination to be correct. *See* 28 U.S.C. § 2254(e)(1).

> 7 Petitioner was originally convicted of two counts of second degree conspiracy. A separate VOP sentencing order was issued for each count.

[*19] In short, petitioner was not put "twice . . . in jeopardy for the same offense. The sentence as corrected imposes a valid punishment for an offense instead of an invalid punishment for that offense." *Bozza v. United States*, 330 U.S. 160, 167, 91 L. Ed. 818, 67 S. Ct. 645 (1947). Accordingly, the Delaware Supreme Court's denial of petitioner's double jeopardy claim does not contradict the principles established in the applicable Supreme Court precedent, nor does it constitute an unreasonable application of that precedent.

Although petitioner's double jeopardy claim does not warrant federal habeas relief, the court observes that petitioner's offender status sheet still lists his VOP sentence for cocaine possession (VN9609041301) as five years. [8] (D.I. 16 at Exh. C.) The sheet indicates that the sentence for another probation violation (VN9709053901) was corrected instead. The court notes, however, that this status sheet is dated May 9, 2003. Respondents may want to inquire as to petitioner's current status to ensure the sentences accurately reflect the sentences imposed.

> 8 Although the correction may not have been made to the cocaine possession VOP sentence, the status sheet still indicates that petitioner's aggregate sentence is the same as originally imposed by the VOP judge: seven years.

[*20] **B. Due process claim regarding misleading information at VOP hearing**

Petitioner's reply contends that his probation officer and respondents presented misleading information at his VOP hearing regarding his completion of a drug treatment program and his failure to attend all weekly probation appointments. He appears to believe that this information affected the judge's sentencing decision. Broadly construing these claims, it appears that petitioner is attempting to assert a due process claim with respect to the entire VOP sentencing proceeding. [9]

9   To the extent this claim is petitioner's attempt to amend his original habeas petition, the court grants the amendment. *See* Fed. R. Civ. P. 15(a).

Petitioner presented this claim to the Delaware Supreme Court in his appeal of the VOP hearing, thereby exhausting state remedies. The Delaware Supreme Court dismissed the claim as meritless. *Jackson v. State*, 806 A.2d 164, 2002 WL 31094260 (Del. Sept. 16, 2002). Thus, [*21] the court must determine if this dismissal was contrary to, or an unreasonable application of, clearly established Federal law. *See* § 2254(d)(1).

[HN15]It is well-settled that revocation of probation hearings are only subject to the minimum requirements of due process. *Black v. Romano*, 471 U.S. 606, 612, 85 L. Ed. 2d 636, 105 S. Ct. 2254 (1985); *United States v. Barnhart*, 980 F.2d 219, 222 (3d Cir. 1992). These requirements include: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to evidence relied on and reasons for revoking probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972)).

Here, petitioner was represented by counsel at his VOP hearing, and he admitted that he had violated his probation. Petitioner does not contend that the allegedly erroneous information was not disclosed to him, [*22] nor does he contend that he was prevented from challenging the allegedly erroneous information at the VOP hearing. As such, his due process claim is meritless, and the Delaware Supreme Court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. This claim does not warrant federal habeas relief under § 2254(d)(1).

## C. Petitioner's due process and equal protection claims with respect to the five year cocaine VOP sentence are procedurally barred

Petitioner contends that the five year sentence imposed for the cocaine possession VOP violated his due process and equal protection rights. Respondents contend that federal habeas review of petitioner's due process and equal protection claims is foreclosed by his procedural default of these claims at the state court level. As explained below, the court agrees.

Petitioner never presented these claims to the Delaware Supreme Court, [10] thereby failing to exhaust state remedies. This failure to exhaust is excused, however, because state procedural rules prevent petitioner from pursuing further state court relief. *See Coleman*, 501 U.S. at 750; *Lines*, 208 F.3d at 160. [*23] [HN16]In Delaware, "the failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim on appeal." *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993) (internal citations omitted); *see also* Del. Supr. Ct. R. 14(b)(vi). By omitting these claims in his postconviction appeal, petitioner waived and abandoned them. *See Somerville v. State*, 703 A.2d 629, 631 (Del. 1997). Further, because petitioner raised these claims in a prior Superior Court proceeding, Superior Court Criminal Rule 61(i)(4) would bar any further consideration of the claims as formerly adjudicated. *See, e.g., Kendall v. Attorney General of Delaware*, 2002 U.S. Dist. LEXIS 6459, 2002 WL 531221, at *4 (D. Del. Mar. 26, 2002). Consequently, further state relief is foreclosed, and these claims are deemed exhausted.

> 10   Although petitioner raised these claims in his motion to review his sentence, he did not raise them in his appeal of the Superior Court's denial of that motion. Petitioner also did not raise these claims in his appeal of the VOP hearing.

[*24]     Although deemed exhausted, these [HN17]claims are still procedurally defaulted, and federal habeas review is foreclosed unless petitioner establishes cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court refuses to hear the claims. *See Coleman v. Thompson*, 501 U.S. 722, 750-51, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); *Harris v. Reed*, 489 U.S. 255, 262, 103 L. Ed. 2d 308, 109 S. Ct. 1038 (1989); *Caswell v. Ryan*, 953 F.2d 853, 860-61 (3d Cir. 1992). Here, petitioner has not demonstrated that an external impediment prevented him from presenting these claims in his postconviction appeal, thereby failing to demonstrate cause for his procedural default. *See Murray v. Carrier*, 477 U.S. 478, 492, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986). Because petitioner has not demonstrated cause, the court does not need to address the issue of prejudice. *See Smith v. Murray*, 477 U.S. 527, 533, 91 L. Ed. 2d 434, 106 S. Ct. 2661 (1986).

Moreover, petitioner has not alleged that he is actually innocent, nor has he presented any colorable evidence of his actual innocence. Thus, he has not demonstrated that a fundamental miscarriage of justice will result from failure to review this claim. *Murray*, 477 U.S. at 496 [*25] [HN18](to establish a miscarriage of justice, a petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent"); *Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002) (a petitioner establishes actual

innocence by proving that no reasonable juror would have voted to find him guilty beyond a reasonable doubt); *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998) (actual innocence means factual innocence, not legal insufficiency). As a result, federal habeas review of petitioner's due process and equal protection claims is unavailable.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. [HN19]A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 146 L. Ed. 2d 542, 120 S. Ct. 1595 (2000). [*26]

For the reasons stated above, the court concludes that petitioner is not entitled to federal habeas relief for any of his claims. Petitioner's double jeopardy claim and one due process claim do not provide a basis for federal habeas relief under 28 U.S.C. § 2254(d)(1), and his other due process claim and equal protection claim are procedurally barred. Reasonable jurists would not find these conclusions unreasonable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate order will be entered.

## ORDER

For the reasons set forth in the memorandum opinion issued this date, IT IS HEREBY ORDERED that:

1. Petitioner Romayne O. Jackson's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I. 1.) is DENIED.

2. The court declines to issue a certificate of appealability.

Sue L. Robinson

UNITED STATES DISTRICT JUDGE

Dated: August [*27] *31*, 2004

LEXSEE



Positive
As of: Nov 16, 2007

**WESTON D. BAILEY, Petitioner, v. RICK KEARNEY, Warden, Sussex Correctional Institution and M. JANE BRADY, Attorney General of the State of Delaware, Respondents.**

**Civil Action No. 95-279-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**1997 U.S. Dist. LEXIS 8038**

**April 3, 1997, Decided**

**NOTICE:**    [*1]  FOR ELECTRONIC PUBLICA-TION ONLY

**SUBSEQUENT HISTORY:** Post-conviction relief denied at Bailey v. State, 2005 Del. LEXIS 227 (Del., June 20, 2005)

**PRIOR HISTORY:** Bailey v. State, 1995 Del. LEXIS 46 (Del., Jan. 30, 1995)

**DISPOSITION:**    Bailey's motion for writ of habeas corpus denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner inmate filed an action for habeas corpus relief pursuant to 28 U.S.C.S. § 2254 against respondents, a warden and a state attorney-general, challenging his conviction of robbery in the first degree, possession of a deadly weapon in the commission of a felony and assault in the first degree.

**OVERVIEW:** The inmate pleaded guilty to the charges against him. His motion for post-conviction relief set forth three claims. He argued his conviction was unlawful because the trial court judge did not explain the action necessary for him to be guilty of the crimes charged. He also contended the judge failed to ask him if his plea had been coerced in any way and that the judge failed to canvass the issue of the case and relied upon statements of the inmate's counsel in determining the plea was voluntary. Under an amendment to 28 U.S.C.S. § 2254, fac-tual determinations made by a state court were presumed correct unless rebutted by clear and convincing evidence. This change did not affect the outcome of the case; therefore, the court refused to decide as to the applicability of the amendment. The court also found the exhaustion requirements of § 2254 were waived by its prior order, however, there was not a sufficient showing to support claims the inmate would be injured if his post-conviction relief motion alleging procedural default was not reviewed. Claims the plea colloquy was defective as not being in compliance with Fed.R.Crim.P. 11 were not cognizable on collateral attack.

**OUTCOME:** The court denied the petition for habeas corpus relief.

**CORE TERMS:** colloquy, robbery, post-conviction, procedural default, plea of guilty, miscarriage of justice, innocence, guilty plea, opening brief, personally, answered, sentence, state remedies, failed to raise, exhaustion requirement, collateral attack, convicted, corpus, deadly weapon, felony, federal habeas, actual prejudice, defense counsel, possible penalty, voluntariness, incarceration, procedurally, sentencing, cognizable, defaulted

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > Prerequisites*

1997 U.S. Dist. LEXIS 8038, *

*Criminal Law & Procedure > Habeas Corpus > Procedure > Filing of Petition > Time Limitations > Antiterrorism & Effective Death Penalty Act*
*Evidence > Inferences & Presumptions > Presumption of Regularity*
[HN1]28 U.S.C.S. § 2254(d) has been amended to place time limits on petitions for relief from state court convictions, permit federal courts to deny relief on the merits despite failure to exhaust state remedies, and foreclose relief on grounds previously adjudicated in state court, unless such previous adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. With regard to factual issues, the new provisions state that any factual determination made by a state court shall be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C.S. § 2254(e).

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > Prerequisites*
*Governments > Courts > Judicial Comity*
[HN2]Before the district court reviews a habeas corpus petitioner's claims, it will ascertain whether petitioner has exhausted all available state remedies. 28 U.S.C.S. § 2254(b). Comity is the rationale underlying the exhaustion requirement, which allows state courts the first opportunity to pass on alleged defects in the criminal proceedings leading to the conviction at issue. Recognizing that principles of federal-state comity must restrain unnecessary federal intrusions into state criminal trials, the United States Supreme Court has held that the exhaustion requirement must be "rigorously enforced." To exhaust state remedies, a petitioner must have raised before the highest state court the factual and legal premises of the claims for relief he asserts in the federal proceeding. In a case where the court determines that the petitioner has not exhausted all state remedies, the court may also determine whether recourse to state collateral review whose results have effectively been predetermined would justify review by the district court.

*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice*
[HN3]Federal habeas review of the claims is barred unless petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in the fundamental miscarriage of justice. The Supreme Court has held that "cause" under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him. To demonstrate cause for a procedural default, petitioner must show that "some objective factor external to the defense" precluded his compliance with the state procedural rules.

*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Ineffective Assistance*
*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > General Overview*
[HN4]Ineffective assistance of counsel may constitute cause for a procedural default. However, this claim must itself be presented to the state courts as required by the exhaustion doctrine.

*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Exceptions to Default*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice*
*Evidence > Procedural Considerations > Exclusion & Preservation by Prosecutor*
[HN5]The miscarriage of justice exception in habeas corpus cases is concerned with actual innocence as compared to legal innocence. "Actual innocence" requires the petitioner to show that it is more likely than not that no reasonable juror would have convicted him. The petitioner must show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted, but with due regard to any unreliability of it, and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt about his guilt.

*Civil Procedure > Jurisdiction > General Overview*
*Civil Procedure > Judicial Officers > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice*
[HN6]The Fed.R.Crim.P. 11 requirement that the court "address the defendant personally" does not necessarily mean that the words must literally issue from the judge's lips. Instead, it means that the judge must insure that the defendant understands the possible penalties before his

plea is accepted. A formal violation of Rule 11 is cognizable on collateral attack only if it creates: (1) an error that is jurisdictional or constitutional; (2) a defect that results in a "miscarriage of justice;" (3) an omission inconsistent with the "rudimentary demands of fair procedure; or (4) extraordinary circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.

**COUNSEL:** Weston D. Bailey, petitioner, Pro se.

For respondents: Loren C. Meyers, Esquire, Chief of Appeals Division, Department of Justice, Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, District Judge

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM OPINION**

Dated: April 3, 1997

Wilmington, Delaware

ROBINSON, District Judge

**I. INTRODUCTION**

Petitioner Weston Bailey D. Bailey ("Bailey") seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Pursuant to the court's August 22, 1996 order (D.I. 17), both Bailey and respondents have filed briefs in support of their respective positions. (D.I. 20, 23) This matter is ripe for judicial action.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

In April 1994 Bailey pleaded guilty before the Superior Court of the State of Delaware to charges of robbery in the first degree, possession of a deadly weapon during the commission of a felony and assault in the first degree. On May 27, 1994, he was sentenced to a term of sixteen years. (D.I. at 2) Bailey filed a motion for postconviction relief pursuant to Superior Court Rule 61 on July 8, 1994, [*2] and supplemented this motion on September 30, 1994. The Superior Court denied the motion on October 18, 1994. (D.I. 4 at B-1, B-5) On December 22, 1994, petitioner appealed the Superior Court's denial of his Rule 61 motion to the Delaware Supreme Court. (D.I. 12, Appellant's Opening Brief) State prosecutors moved for summary affirmance of the Superior Court decision under Delaware Supreme Court Rule 25(a). (D.I. 12, Appellee's Motion to Affirm) On

January 30, 1995, the Delaware Supreme Court granted this motion. (D.I. 12, Order) This petition followed.

In his petition, Bailey sets forth three claims. Claim 1 asserts that Bailey's conviction is unlawful because during the judge's plea colloquy, the judge "never explained to Bailey the action or conduct on his part necessary to be guilty of the charges he plead guilty to." (D.I. 2 at 5) Claim 2 asserts that Bailey's conviction is unlawful because the judge "never asked Bailey had he been promised anything, threatened by anyone or forced to enter his plea of guilty because of [the] wishes of his lawyer or someone else or by some type of misconception." (D.I. 2 at 5) Claim 3 asserts that the judge's plea colloquy was further deficient [*3] because the judge failed to canvass the issues of the case and relied upon the statements of Bailey's lawyer in determining that the plea was voluntary. (D.I. 2 at 6)

On August 21, 1996, Bailey filed a motion to dismiss. (D.I. 16) On August 22, 1996, the court denied Bailey's motion and noted that claims 1 and 2 may be barred by procedural default since he failed to present them to the state courts. (D.I. 17) The court ordered Bailey to file a brief setting forth his arguments relative to the issue of procedural default bar, including a demonstration of either cause and prejudice or that a miscarriage of justice would result from the court's failure to consider his claims. (D.I. 17) The court also ordered respondents to file a brief in support of the position that the plea colloquy was sufficient under _Boykin v. Alabama, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969)._ (D.I. 17)

**III. DISCUSSION**

**A. The Antiterrorism and Effective Death Penalty Act**

Since this petition was filed, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214. [HN1]This statute amends several of the provisions pertaining to [*4] federal habeas corpus relief. The amendments place time limits on petitions for relief from state court convictions, permit federal courts to deny relief on the merits despite failure to exhaust state remedies, and foreclose relief on grounds previously adjudicated in state court, unless such previous adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996). With regard to factual issues, the new provisions state that any factual determination made by a state court shall be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e).

The Third Circuit has not ruled on whether the non-death penalty provisions of the AEDPA apply retroactively. *See, e.g., Berryman v. Morton*, 100 F.3d 1089, 1102-03 (3d Cir. 1996); *Meyers v. Gillis*, 93 F.3d 1147, 1149 n.1 (3d Cir. 1996). Other courts of appeal are split. The Second, [*5] Ninth, and Tenth Circuits have held that these provisions should not be applied to cases pending when the AEDPA was passed. *Boria v. Keane*, 90 F.3d 36, 38 (2d Cir. 1996); *Edens v. Hannigan*, 87 F.3d 1109, 1112 n.1 (10th Cir. 1996); *Jeffries v. Wood*, 103 F.3d 827 (9th Cir. 1996) (en banc). Three other circuit courts, however, have applied the amendments retroactively. *Lindh v. Murphy*, 96 F.3d 856 (7th Cir. 1996), cert. granted, 117 S. Ct. 726 (1997); *Hunter v. United States*, 101 F.3d 1565 (11th Cir. 1996) (en banc); *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), cert. denied, 137 L. Ed. 2d 315, 117 S. Ct. 1114 (1997). Because, in the case at bar, the outcome would be the same under either standard, the court finds that it is unnecessary, at this time, to take a position on this unsettled issue of law. For the purposes of this decision, the court's analysis will follow the old rules.

## B. Exhaustion Requirement

[HN2]Before the court reviews petitioner's claims, it will ascertain whether petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b). [1] Comity is the rationale underlying the exhaustion requirement, which allows state courts [*6] the first opportunity to pass on alleged defects in the criminal proceedings leading to the conviction at issue. Recognizing that principles of federal-state comity must restrain unnecessary "federal intrusions into state criminal trials," *Engle v. Isaac*, 456 U.S. 107, 128, 71 L. Ed. 2d 783, 102 S. Ct. 1558 (1982), the United States Supreme Court has held that the exhaustion requirement must be "rigorously enforced." *Rose v. Lundy*, 455 U.S. 509, 518, 71 L. Ed. 2d 379, 102 S. Ct. 1198 (1982); see also *Santana v. Fenton*, 685 F.2d 71, 77 (3d Cir. 1982).

       1  Except where otherwise noted, references to § 2254 are to the statute as it existed before passage of the AEDPA.

To exhaust state remedies, a petitioner must have raised before the highest state court the factual and legal premises of the claims for relief he asserts in the federal proceeding. *Chaussard v. Fulcomer*, 816 F.2d 925 (3d Cir. 1987); *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986). In a case where the court determines [*7] that the petitioner has not exhausted all state remedies, the court may also determine whether "recourse to state collateral review whose results have effectively been predetermined . . ." would justify review by the district court. *Castille v. Peoples*, 489 U.S. 346, 350, 103 L. Ed. 2d 380, 109 S. Ct. 1056 (1989).

In his habeas petition, Bailey raises three specific complaints. Claim 3 was presented to the state supreme court, thus exhausting state remedies. (D.I. 12, Appellant's Opening Brief at 1) Claims 1 and 2 were not presented to the state courts and are, therefore, barred by Delaware Criminal Rule 61(i)(2). (D.I. 17 at 2) For the reasons stated in the court's August 22, 1995 order, Bailey is excused from the exhaustion requirement as to these claims. (D.I. 17 at 2)

## C. Procedural Default for Claims 1 and 2

Bailey's first two claims charge that the trial judge did not explain to him during the plea colloquy the nature of the offenses to which he was pleading guilty, and that the judge accepted the plea without establishing that petitioner knew the consequences of the plea and that the plea was not coerced. (D.I. 2 at PP12A and 12B) Because Bailey failed to raise these [*8] claims in his post-conviction relief motion and has consequently defaulted them in state court pursuant to an independent and adequate state procedural rule -- Criminal Rule 61(i)(2) --, [HN3]federal habeas review of the claims is barred unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in the fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991). The Supreme Court has held that "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him. . . ." *Id.*, 501 U.S. at 753, citing *Murray v. Carrier*, 477 U.S. 478, 488, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986) (emphasis in original). To demonstrate cause for a procedural default, petitioner must show that "some objective factor external to the defense" precluded his compliance with the state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493, 113 L. Ed. 2d 517, 111 S. Ct. 1454 (1991), quoting *Murray v. Carrier*, 477 U.S. 478, 488, 91 L. Ed. 2d 397, [*9] 106 S. Ct. 2639 (1986).

Bailey argues that cause for his procedural default and actual prejudice exists due to the ineffectiveness of

his defense attorney. (D.I. 20 at 4) Bailey specifically alleges that his trial counsel "intentionally deceived [him] prior to his entering a plea of guilty" for the three counts. (D.I. 20 at 4) He alleges that he "entered the plea of guilty on the promise of counsel; [sic] he would only receive a four (4) year sentence under supervision level 5 for the offenses committed." (D.I. 20 at 4-5) Bailey also points out that his trial counsel did not object to the prosecutor's recommendation that he be sentenced for fifteen years at supervision level 5. (D.I. 20 at 5)

The court is unpersuaded by Bailey's arguments. The procedural default issue relates to Bailey's failure to raise claims 1 and 2 in his state post-conviction motion. (D.I. 23 at 3) The performance of Bailey's defense counsel during the plea proceedings and at sentencing is not relevant to this issue. The alleged defectiveness of Bailey's attorney does not explain why Bailey failed to raise claims 1 and 2 in his state post-conviction motion. [2]

> 2  Bailey was not represented by counsel in the state post-conviction proceedings.

[*10] As Bailey notes, [HN4]ineffective assistance of counsel may constitute cause for a procedural default. _Murray v. Carrier, 477 U.S. 478, 488-489, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986)._ However, this claim must itself be presented to the state courts as required by the exhaustion doctrine. _Id._ at 488-499. Bailey failed to raise this claim in his state post-conviction motion and does not offer any explanation for this failure. Accordingly, this claim is procedurally barred from federal habeas review. [3] Since Bailey has offered no explanation why he failed to raise claims 1 and 2 in his state post-conviction motion, the court finds that he has failed to establish cause. Since Bailey has failed to establish cause, the court need not reach the question of whether he has shown any actual prejudice from the alleged violation of federal law. _Presnell v. Kemp, 835 F.2d 1567, 1582 n.29 (11th Cir. 1988)_ (citations omitted).

> 3  The court, therefore, will not consider this claim as an independent ground for relief.

[*11] The court also finds that Bailey fails to establish that a "miscarriage of justice" would occur if these claims were not reviewed by this court. [HN5]"The miscarriage of justice exception is concerned with actual innocence as compared to legal innocence. . . ." _Sawyer v. Whitley, 505 U.S. 333, 339, 120 L. Ed. 2d 269, 112 S. Ct. 2514 (1992)._ "Actual innocence" requires "the petitioner to show that it is more likely than not that no reasonable juror would have convicted him." _Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851, 867, 130 L. Ed. 2d 808 (1995); Sawyer, 505 U.S. at 340_ ("A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of

the crime."). The petitioner must "show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tainted claimed to have been wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt about his guilt." _Kuhlmann v. Wilson, 477 U.S. 436, 455 n.17, 91 L. Ed. 2d 364, 106 S. Ct. 2616 (1986)_ (internal [*12] quotations omitted). _See also Sawyer, 505 U.S. at 350_ (petitioner must show by clear and convincing evidence that but for constitutional error . . . , no reasonable juror would have found him eligible for" the crime charged).

In the present case, Bailey's claims relating an involuntary guilty plea do not amount to claims of "actual innocence." Bailey's claims concern legal deficiencies during the plea colloquy which do not constitute an argument of "actual innocence." _See Stanley v. Lockhart, 941 F.2d 707, 709 (8th Cir. 1991)_ (not addressing petitioner's allegations that his plea was defective in considering his actual innocence). Bailey expressly acknowledged his guilt during the plea colloquy. [4] (D.I. 4 at A8-9) In his memorandum in support of his habeas petition, Bailey does not argue that he is actually innocent. In his brief to the Supreme Court of the State of Delaware, Bailey does assert that he "seeks to withdraw his plea and take his case to trial and let his peers be his judge, because he went along for a ride and is not able to control the actions of others when they seek to commit criminal acts." (D.I. 4, Appellant's opening brief at 5) He also argued that "his [*13] lawyer mis-informed [sic] him about [the] criminal liabilities which influenced him to take this ill-fated plea to a crime he didn't commit." (D.I. 4, Appellant's opening brief at 8) Aside from these general arguments, Bailey does not appear to argue that he is "actually innocent" of the crimes for which he was convicted.

> 4  During the plea colloquy, the judge specifically asked Bailey whether he was actually guilty and Bailey affirmatively answered:
>
> > THE COURT: Are you entering these pleas of guilty to the charge of robbery in the first degree, possession of a deadly weapon during the commission of a felony, and assault first degree, because, in fact, you are guilty of these charges?
>
> THE DEFENDANT [Bailey]: Yes.
>
> (D.I. 4 at A-8-9)

Indeed, in stating that "he went along for a ride" and was "not able to control the actions of others when they seek to commit criminal acts," Bailey appears to admit that he was in the vehicle used the night of the robbery. Furthermore, in his motion for post-conviction [*14] relief before the Superior Court of the State of Delaware, Bailey stated "that [he] would have never taken such a plea . . . because of his limited role in the incident which did not include the actual robbery or weapon offense(s)." (D.I. 26, Respondent's motion to affirm at B-29) This plainly contradicts his statement to police that he stayed with his girlfriend the night of the robbery. (D.I. 26, Bailey's Statement to Police at 2)

The investigation report also does not provide any facts in Bailey's favor. In the report, Bailey's girlfriend stated that Bailey was involved in the robbery and not with her that night. (D.I. 26, Crime report at 7) Bailey's three co-conspirators also stated to police that Bailey was involved in the armed robbery. [5] (D.I. 26, Statement of Shavelle Washington at 1; Statement of Curtis Townsend at 3; Statement Bobby Collins at 2) The clerk of the tavern that was robbed also identified Bailey in a photographic line-up as the person holding the gun during the robbery. (D.I. 26, Crime report at 9)

> 5   Collins and Washington were convicted for the armed robbery after a jury trial in Superior Court in March 1994. (*See* D.I. 12, Respondents' motion to affirm at B-12) Townsend pled guilty to robbery and conspiracy in April 1994. The convictions of Collins and Washington were affirmed on direct appeal. *Collins v. State*, 1995 Del. LEXIS 101, No. 232,1994; 1995 WL 120655 (Del. Supr., March 10, 1995); *Washington v. State*, 1994 Del. LEXIS 395, No. 195,1994; 1994 WL 716044 (Del. Supr., Dec. 20, 1994).

[*15]  Based on these facts and the fact that Bailey does not appear to argue that he is "actually innocent," the court finds that he has failed to establish that a fundamental miscarriage of justice would occur if his claims are not reviewed. Accordingly, the court finds that claims 1 and 2 are barred from federal habeas review as they are procedurally defaulted claims.

## D. Claim 3

Bailey's third claim is that the plea colloquy was defective because the trial judge "failed to canvass[] ... the issues of [the] case before him to determine [the] voluntariness of [the] plea...." (D.I. 2 at 6, P12C) More specifically, Bailey contends that the judge failed "to meet his responsibilities" by allowing defense counsel to ask most of the questions during the colloquy. [6] (D.I. 2 at 6, P12C) Bailey complains that the trial judge, (1) "didn't

ask him anything about was he promised anything, was his plea coerced, that he had a right to go to trial, if he still wished to and that the decision to plead guilty must be his own and not the wishes of anybody else or of his lawyer;" (2) "never made the determination" whether the plea was entered knowingly and voluntarily; and (3) "failed completely" [*16] to address the issues of "coercion, understanding of the accusation and knowledge of the direct consequences of the plea." (D.I. 4, Appellant's Opening Brief at 5-6)

> 6   The plea colloquy transcript reveals that Bailey's trial counsel, Mr. Callaway, questioned him as follows:
>
>> [MR. CALLAWAY:] Mr. Bailey, I show you this Plea Agreement and ask you if this is your signature.
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: Did you and I go over each and every paragraph of this form?
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: Mr. Bailey, I show you this Guilty Plea Form and ask you if this is your signature?
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: Did you and I go over each and every paragraph of that form?
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: And did you answer the questions in your own handwriting?
>>
>> THE DEFENDANT: Yes.
>>
>> MR. CALLAWAY: Mr. Bailey, have you had any alcohol, drugs or medication in the last 24 hours?
>>
>> THE DEFENDANT: No.
>>
>> MR. CALLAWAY: Mr. Bailey, it is your desire to enter guilty pleas to these three charges. Therefore, there will not be a trial. Therefore, you give up all the rights you would have at a trial and your right to appeal.

THE DEFENDANT: Yes.

MR. CALLAWAY: And have I explained the Court could impose up to 50 years incarceration on these charges?

THE DEFENDANT: Yes.

MR. CALLAWAY: Have I explained to you under the robbery charge the Court is required under the law to impose a 2-year minimum sentence?

THE DEFENDANT: Yes.

MR. CALLAWAY: And have I explained to you under the Delaware Statute with respect to the weapons charge that any sentence you receive would be a mandatory sentence; that the Statute also requires that a 2-year sentence must be imposed?

THE DEFENDANT: Yes.

MR. CALLAWAY: Are you presently on probation or parole to any court?

THE DEFENDANT: No.

MR. CALLAWAY: And have I explained to you the entry of a plea of guilty to this charge, which is a felony, would cause you to lose your right to be a juror, hold public office, and to own or possess a deadly weapon?

THE DEFENDANT: Yes; I understand.

Counsel thereafter handed the executed Plea Agreement and Guilty Form to the trial judge, who questioned petitioner as follows:

THE COURT: Mr. Bailey, do you think you have had adequate time to discuss this matter with Mr. Callaway?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with the representation he has provided?

THE DEFENDANT: Yes, sir.

THE COURT: Are you entering these pleas of guilty to the charge of robbery in the first degree, possession of a deadly weapon during the commission of a felony, and assault first degree, because, in fact, you are guilty of these charges?

THE DEFENDANT: Yes.

THE COURT: All right. I will accept the pleas as they have been tendered.

(D.I. 4 at A6-A9)

[*17]  According to Bailey, the trial judge himself is required personally to question the defendant and must expressly state, when the plea is accepted, that it is being entered knowingly and voluntarily. (D.I. 4 at 1-2) Bailey also argues that defense counsel's representations that his client understood the consequences of his plea and "conduct necessary to be guilty of charge does not relieve the Court of its responsibilities, to make sure Bailey 'possessed' an understanding of law in relation to the facts." (D.I. 4 at 2, citing *United States v. Vera*, 514 F.2d 102, 104 (5th Cir. 1975)). In support of his claim, Bailey directs the court to Delaware Criminal Rules 11(c) and (d), which state, in relevant part, that "the court must address the defendant personally ... and inform the defendant of, and determine that the defendant understands," *inter alia*: (1) the nature of the charges, the mandatory minimum penalty, if any, and the maximum possible penalty; (2) that the defendant has the right to plead not guilty and to be tried by a jury; (3) that by pleading guilty, the defendant waives his right to a trial; and (4) that the court "shall not accept" a guilty plea "without first, [*18] by addressing the defendant personally in open court, determining that the plea is voluntary . . . ."

In the present case, it is clear that this information was conveyed to Bailey at his plea colloquy. The nature of the charges were explained in the plea agreement, which Bailey indicated he had gone over with counsel; the trial judge repeated the charges in the colloquy, and asked Bailey if he was entering guilty pleas because he was in fact guilty. Bailey answered in the affirmative. Defense counsel asked Bailey to state whether he had explained to him the maximum penalty for all counts and minimum penalties for two of the counts. Bailey answered "yes." Defense counsel further stated to Bailey that because he desired to enter guilty pleas, "there will not be a trial. Therefore, you give up all the rights you would have at a trial and your right to appeal." Bailey again responded "yes." Finally, the trial judge satisfied

the requirement that voluntariness be ascertained by asking Bailey whether he had had adequate time to discuss his plea with counsel, and whether he was satisfied with counsel's representation. To each, Bailey answered in the affirmative.

The only question therefore [*19] is whether the identity of the conveyor rendered the colloquy constitutionally defective. The court finds that it did not. The purpose of the language in Rule 11 (c) and (d) is "to establish clearly of record the voluntariness of the plea by a response directly from the defendant," rather than from defense counsel. *United States v. Davis*, 470 F.2d 1128, 1130 (3d Cir. 1972). [HN6]The Rule 11 requirement that the court "address the defendant personally" "does not necessarily mean that the words must literally issue from the judge's lips." *United States v. Hamilton*, 568 F.2d 1302, 1306 (9th Cir. 1978) (interpreting parallel provision of Fed.R.Crim.P. 11) Instead, it means that the judge "must insure that the defendant understands the possible penalties before his plea is accepted."*Id.*

A formal violation of Rule 11 is cognizable on collateral attack only if it creates: (1) an error that is jurisdictional or constitutional; (2) a defect that results in a "miscarriage of justice;" (3) an omission inconsistent with the "rudimentary demands of fair procedure;" or (4) "extraordinary circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *United* [*20] *States v. Timmreck*, 441 U.S. 780, 783, 60 L. Ed. 2d 634, 99 S. Ct. 2085 (1979).

In reviewing the record against these standards, the court concludes that, even if Rule 11 was violated, the alleged Rule 11 violations cannot in themselves command relief on collateral attack. Bailey's attorney specifically stated during the plea proceedings that "the total range of sentencing available to the sentencing judge would be a 4 year minimum to a 50 year period of incarceration at Level 5." (D.I. 4 at A-5) Bailey's attorney also asked Bailey: "And have I explained the Court could impose up to 50 years incarceration on these charges?" (D.I. 4 at A-7) Bailey answered that question in the affirmative. (D.I. 4 at A-7) Based on this record, the court concludes that the trial judge had sufficiently insured that Bailey was aware of the possible penalties before he entered his plea of guilty. The court finds that any violation that may have resulted because the judge did not personally ask specific questions are not cognizable on collateral attack given the standard stated in *Timmreck*. *Id.*

## IV. CONCLUSION

For the reasons stated above, the court finds that Bailey has failed to establish [*21] cause or that a miscarriage of justice would occur if his procedurally defaulted claims are not reviewed. The court also concludes that any defect in the plea colloquy is not cognizable on collateral attack. Therefore, the court shall deny Bailey's motion for writ of habeas corpus. An order consistent with this memorandum opinion shall issue.

LEXSEE



Positive
As of: Nov 16, 2007

**DAVID L. MAYFIELD, Petitioner, v. THOMAS L. CARROLL, Warden, Respondent.**

**Civ. Act. No. 04-888-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2005 U.S. Dist. LEXIS 24137**

**October 11, 2005, Decided**

**PRIOR HISTORY:** Mayfield v. State, 2004 Del. LEXIS 294 (Del., July 1, 2004)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner inmate, who was in state custody serving a sentence for offenses involving sexual contact with minors, filed an application for a writ of habeas corpus pursuant to 28 U.S.C.S. § 2254.

**OVERVIEW:** The inmate was found in violation of his probation by reason of his use of crack cocaine and his failure to report to his probation officer. His original sentence was eight years' incarceration, and the sentence imposed after his violation of probation was four years and nine months. The inmate asserted that a probation officer committed perjury at his probation violation hearing, that the hearing was flawed because he was not given prior notice of the alleged violations, and that his sentence was too harsh. The court denied relief, concluding that the inmate's sentence, which did not exceed the authorized statutory limits under Del. Code Ann. tit. 11, § 4334(c), was not grossly disproportionate to the offense for purposes of an Eighth Amendment, U.S. Const. amend. VIII, analysis. At the probation violation hearing, the probation officer's statements regarding the inmate's drug habit and sexual offenses against minors were accurate and did not violate the inmate's due process rights. Claims of lack of notice of the alleged violations and ineffective assistance of counsel were procedurally defaulted, and no cause was shown for the failure to raise the issues in state court.

**OUTCOME:** The court dismissed the inmate's petition.

**CORE TERMS:** sentence, probation, federal habeas, probation violation, violation of probation, suspended, exhausted, miscarriage of justice, sexual, probation officer, actual prejudice, procedural default, direct appeal, innocence, state remedies, ineffective assistance, procedurally barred, proportionality, appealability, procedurally, probationer, certificate, sentencing, defaulted, notice, state law, probation violation hearing, citations omitted, unusual punishment, grossly disproportionate

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > General Overview*
[HN1]Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to reduce delays in the execution of state and federal criminal sentences and to further the principles of comity, finality, and federalism. Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C.S. § 2254(a). The AEDPA increases the deference federal courts must give to state court decisions, primarily by imposing procedural requirements and standards in order to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law.

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > General Overview*

[HN2]Absent exceptional circumstances, a federal court cannot grant federal habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C.S. § 2254(b).

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > General Overview*

[HN3]See 28 U.S.C.S. § 2254(b)(1).

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > General Overview*

[HN4]The exhaustion requirement of 28 U.S.C.S. § 2254 is based on principles of comity, requiring a petitioner to give state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process. Section 2254(c) provides that a petitioner shall not be deemed to have exhausted remedies available if he has the right under the law of the state to raise, by any available procedure, the question presented. A petitioner must demonstrate that he fairly presented the habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.

*Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > General Overview*

[HN5]If a petitioner presents unexhausted habeas claims to a federal court, but further state court review is procedurally barred, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Although deemed exhausted, such claims are considered procedurally defaulted.

*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Cause & Prejudice Standard > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice*

[HN6]A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.

*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Cause & Prejudice Standard > General Overview*
*Criminal Law & Procedure > Habeas Corpus > Procedural Default > Actual Innocence & Miscarriage of Justice > Miscarriage of Justice*

[HN7]To demonstrate cause for a procedural default, the petitioner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. To demonstrate actual prejudice, the petitioner must show not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. The miscarriage of justice exception applies only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent. Actual innocence means factual innocence, not legal insufficiency, and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.

*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview*

[HN8]If a state court adjudicated a federal habeas claim on the merits, federal habeas relief cannot be granted unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C.S. § 2254(d)(1), (2). A state court has adjudicated a claim on the merits for the purposes of § 2254(d) if the state court decision finally resolves the parties' claims, with res judicata effect, and is based on the substance of the claim advanced, rather than on a procedural, or other ground.

*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview*
[HN9]A federal habeas court must presume that a state court's determinations of factual issues are correct. 28 U.S.C.S. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebuttable if the petitioner presents clear and convincing evidence. The clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions.

*Criminal Law & Procedure > Sentencing > Guidelines*
*Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment*
*Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > General Overview*
[HN10]The severity of a defendant's sentence alone constitutes no ground for habeas relief, provided the sentence is within statutory limits. A federal court can only review a state sentence that is alleged to violate a separate constitutional limitation. Accordingly, to the extent a petitioner contends his sentence violates a state's sentencing guidelines, he presents a state law issue that is not cognizable on federal habeas review. However, to the extent a petitioner alleges his sentence constitutes cruel and unusual punishment under the Eighth Amendment, U.S. Const. amend. VIII, he presents a proper claim for federal habeas review.

*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview*
[HN11]The threshold inquiry under 28 U.S.C.S. § 2254(d)(1) is to determine the clearly established federal law governing the issue at the time a petitioner's conviction became final.

*Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Cruel & Unusual Punishment*
*Constitutional Law > Bill of Rights > State Application*
[HN12]The Eighth Amendment, U.S. Const. amend. VIII, forbids cruel and unusual punishment, and it applies to the States via the Fourteenth Amendment, U.S. Const. amend. XIV.

*Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Cruel & Unusual Punishment*
*Criminal Law & Procedure > Sentencing > Cruel & Unusual Punishment*

*Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview*
[HN13]For the purposes of analyzing an Eighth Amendment, U.S. Const. amend. VIII, claim under 28 U.S.C.S. § 2254(d)(1), the only clearly established governing legal principle is a gross proportionality principle, the precise contours of which are unclear, applicable only in the exceedingly rare and extreme case. The Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime. In other words, the Eighth Amendment contains a narrow proportionality principle that applies to noncapital sentences.

*Criminal Law & Procedure > Sentencing > Alternatives > Probation > General Overview*
[HN14]In Delaware, after determining that a probationer violated the terms of his probation, the superior court is authorized to reimpose any portion of his previously suspended prison term, giving credit for all time previously served on the sentence at Level V incarceration. The maximum permissible sentence for a probation violation does not depend upon whether the probation violation is technical or not; rather, the maximum permissible sentence depends upon the probationer's original sentence and the amount of time previously suspended and served at Level V.

*Criminal Law & Procedure > Sentencing > Alternatives > Probation > General Overview*
[HN15]See Del. Code Ann. tit. 11, § 4334(c).

*Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection*
*Criminal Law & Procedure > Sentencing > Alternatives > Probation > General Overview*
[HN16]Revocation of probation hearings are only subject to the minimum requirements of due process. These requirements include: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to evidence relied on and reasons for revoking probation.

*Criminal Law & Procedure > Habeas Corpus > State Grounds > General Overview*

*Criminal Law & Procedure > Habeas Corpus > Procedural Default > General Overview*
[HN17]If a state court refuses to address the merits of a petitioner's constitutional claim based upon an adequate and independent state procedural rule, the claim is considered to be procedurally defaulted. An independent and adequate state ground precludes federal habeas review.

*Criminal Law & Procedure > Postconviction Proceedings > General Overview*
[HN18]See Del. Super. Ct. R. Crim. P. 61(i)(2).

*Criminal Law & Procedure > Habeas Corpus > Appeals > General Overview*
[HN19]When a district court issues a final order denying a 28 U.S.C.S. § 2254 petition, the court must also decide whether to issue a certificate of appealability. 3rd Cir. R. 22.2. A certificate of appealability is appropriate when a petitioner makes a substantial showing of the denial of a constitutional right by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. 28 U.S.C.S. § 2253(c)(2).

**COUNSEL:** [*1] For David L. Mayfield, Petitioner, Pro se.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for Respondent.

**JUDGES:** Farnan, Judge.

**OPINION BY:** Joseph J. Farnan Jr.

**OPINION**

*MEMORANDOM OPINION*

October *11,* 2005

Wilmington, Delaware

Joseph J. Farnan Jr.

**Farnan, Judge**

**I. INTRODUCTION**

Petitioner David L. Mayfield ("Petitioner") is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the Court is Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition"). (D.I. 1; D.I.

12; D.I. 17.) For the reasons that follow, the Court will deny his Petition.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

On January 19, 1993, a New Castle County grand jury indicted Petitioner on one count of first degree unlawful sexual intercourse, first degree criminal solicitation, sexual harassment, and four counts of second degree unlawful sexual contact. These charges stemmed from incidents involving Petitioner's actions with five teenage boys.

In January 1996, Petitioner pled guilty to the lesser included offense of third [*2] degree unlawful sexual intercourse in exchange for which the State dismissed the balance of the indictment. In March 1996, the Superior Court sentenced Petitioner to 8 years at Level V, suspended immediately for 8 years at Level IV home confinement, suspended after serving 9 months for the balance at Level III probation.

Subsequently, the Superior found Petitioner guilty of violating his probation on three separate occasions: September 21, 1999; June 28, 2001; and October 1, 2002. At the last violation hearing, the Superior Court sentenced Petitioner to 6 years at Level V, suspended after 3 years for 3 years at Level IV work release, suspended in turn after 6 months for 30 months at Level III probation. On that same date, the Superior Court also found Petitioner in violation of his probation on a separate conviction for possession of crack cocaine, and sentenced him to 1 year 9 months at Level V, suspended after 1 year for 9 months at Level III probation.

Petitioner appealed the sentence to the Delaware Supreme Court, alleging: (1) the probation officer committed perjury; (2) his sentence was too harsh; and (3) the Superior Court judge who conducted the hearing was not his original [*3] sentencing judge. The Delaware Supreme Court affirmed his conviction and sentence. *Mayfield v. State,* 820 A.2d 372 (Table), 2003 WL 1711946 (Del. 2003).

In April 2003, Petitioner filed his first motion for state post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61, alleging: (1) counsel provided ineffective assistance by failing to provide him with an understanding of the law in relation to the facts and to advise him meaningfully of his options; (2) counsel provided ineffective assistance by not explaining the elements required to establish the crime charged; (3) the court accepted his guilty plea [regarding the sexual charges] without inquiring into whether he understood the nature of the charges; and (4) violation of his plea agreement because the probation officer and defense counsel led him to believe that he would be receiving a

sentence for the violation within the Truth-In-Sentencing ("T.I.S.") guidelines. *State v. Mayfield,* 2003 Del. Super. LEXIS 214, 2003 WL 21267422 (Del. Super. Ct. June 2, 2003). The Superior Court denied the motion. *Id.*

In December 2003, Petitioner filed a second Rule 61 motion, alleging: (1) the probation officer who [*4] testified at his probation violation hearing committed perjury; (2) the probation violation hearing was flawed because he was not given prior notice of the alleged violations; and (3) his sentence was excessive. The Superior Court denied Petitioner's Rule 61 motion. *Mayfield v. State,* 2004 Del. Super. LEXIS 27, 2004 WL 249588 (Del. Super. Ct. Jan. 29, 2004). He appealed, and the Delaware Supreme Court affirmed the Superior Court's decision. *Mayfield v. State,* 2004 Del. LEXIS 294, 2004 WL 1535776 (Del. 2004).

In a form Petition dated July 2004, Petitioner instituted . the habeas proceeding currently before the Court. (D.I. 1.) He subsequently filed additional papers supplementing his Petition. (D.I. 12; D.I. 17.)

Respondent filed an Answer requesting the Court to dismiss the Petition because one claim is procedurally barred, and three claims do not warrant federal habeas relief under 28 U.S.C. § 2254(d)(1). (D.I. 9.) Petitioner filed a Memorandum in Opposition. (D.I. 35.)

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism And Effective Death Penalty Act Of 1996

[HN1]Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 [*5] ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* 538 U.S. 202, 206, 155 L. Ed. 2d 363, 123 S. Ct. 1398 (2003) (internal citations and quotation marks omitted). Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (a). The AEDPA increases the deference federal courts must give to state court decisions, primarily by imposing procedural requirements and standards "in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693, 152 L. Ed. 2d 914, 122 S. Ct. 1843 (2002); *see Woodford,* 538 U.S. at 206.

### B. Exhaustion and Procedural Default

[HN2]Absent exceptional circumstances, a federal court cannot grant federal habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254 (b); *O' Sullivan v. Boerckel,* 526 U.S. 838, 842-44, 144 L. Ed. 2d 1, 119 S. Ct. 1728 (1999); [*6] *Picard v. Connor,* 404 U.S. 270, 275, 30 L. Ed. 2d 438, 92 S. Ct. 509 (1971). The AEDPA states, in pertinent part:

[HN3]An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

[HN4]The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O' Sullivan,* 526 U.S. at 844-45; *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000); 28 U.S.C. § 2254(c)(A petitioner "shall not be deemed to have exhausted remedies available . . . if he has the right under the law of the state to raise, by any available procedure, the question presented"). A petitioner [*7] must demonstrate that he "fairly presented" the habeas claim to the state's highest court, either on direct appeal or in a postconviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997) (citations omitted); *Coverdale v. Snyder,* 2000 U.S. Dist. LEXIS 22192, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn,* 355 F.3d 707, 714 (3d Cir. 2004) (citing *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir. 1999)).

[HN5]If a petitioner presents unexhausted habeas claims to a federal court, but further state court review is procedurally barred, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989). Although deemed exhausted, such

claims are considered procedurally defaulted. *Coleman v. Thompson,* 501 U.S. 722, 749, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); [*8] *Lines,* 208 F.3d at 160.

[HN6]A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.; *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). [HN7]To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986). To demonstrate actual prejudice, the petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review [*9] the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451, 146 L. Ed. 2d 518, 120 S. Ct. 1587(2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States,* 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard Of Review Under The AEDPA

[HN8]If a state court adjudicated a federal habeas claim on the merits, federal habeas relief cannot be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. [*10] 28 U.S.C. § 2254(d)(1) & (2); *Williams v. Taylor,* 529 U.S. 362, 412, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir. 2001). A state court has adjudicated a claim on the merits for the purposes of 28 U.S.C. § 2254 (d) if the state court "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced,

rather than on a procedural, or other ground." *Rompilla v. Horn,* 355 F.3d 233, 247 (3d Cir. 2004) (internal citations omitted), *rev'd on other grounds by Rompilla v. Beard,* - U.S. - , 162 L. Ed. 2d 360, 125 S.Ct. 2456 (2005).

Finally, [HN9]a federal habeas court must presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254 (e) (1). This presumption of correctness applies to both explicit and implicit findings of fact, *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir. 2000), and is only rebuttable if the petitioner presents clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 341, 154 L. Ed. 2d 931, 123 S. Ct. 1029 (2003) [*11] (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner presents four grounds in his Petition and supplemental papers challenging his 2002 violation of probation proceeding; (1) the Superior Court's sentence is excessive because he only committed technical violations of his probation; (2) the probation officer perjured herself during the violation of probation hearing, and this perjured testimony caused the Superior Court to find he was guilty; (3) he was not notified of the evidence against him prior to the violation of probation hearing; and (4) his attorney provided ineffective assistance during his appeal of the violation of probation.

## A. Claim One

In his first claim, Petitioner alleges that the Superior Court violated Delaware's sentencing guidelines in issuing a 4 year 9 month probation violation sentence at Level V imprisonment. He also contends that this sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment because he only had two technical violations of his probation.

[*12] As an initial matter, the Court notes that [HN10]"the severity of the defendant's sentence alone constitutes no ground for [habeas] relief," *Jackson v. Myers,* 374 F.2d 707, 711 n. 11 (3d Cir. 1967), provided the sentence is within statutory limits. *Townsend v. Burke,* 334 U.S. 736, 741, 92 L. Ed. 1690, 68 S. Ct. 1252 (1948). A federal court can only review a state sentence that is alleged to violate a separate constitutional limitation. *See Pringle v. Court of Common Pleas,* 744 F.2d 297, 300 (3d Cir. 1984). Accordingly, to the extent Petitioner contends his sentence violates Delaware's sentencing guidelines, he has presented a state law issue that is not cognizable on federal habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67, 116 L. Ed. 2d 385, 112 S. Ct.

475 (1991). However, to the extent Petitioner alleges his sentence constitutes cruel and unusual punishment under the Eighth Amendment, he has presented a proper claim for federal habeas review.

Respondent acknowledges that Petitioner exhausted state remedies for his Eighth Amendment claim by presenting it to the Delaware Supreme Court on direct appeal. The Delaware Supreme Court denied the claim on the merits. See Rompilla, 355 F.3d at 247. [*13] Therefore, federal habeas relief will only be warranted if the Delaware Supreme Court's decision is contrary to, or an unreasonable application of, clearly settled Federal law as established by the Supreme Court. 28 U.S.C. § 2254(d)(1).

[HN11]The threshold inquiry under § 2254 (d) (1) is to determine the clearly established federal law governing the issue at the time the petitioner's conviction became final. Williams, 529 U.S. at 411; Fischetti v. Johnson, 384 F.3d 140, 148 (3d Cir. 2004). [HN12]The Eighth Amendment forbids cruel and unusual punishment, and it applies to the States via the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 667, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962).

Two recent decisions of the United States Supreme Court summarize the applicable Eighth Amendment principles for noncapital sentencing: Lockyer v. Andrade, 538 U.S. 63, 155 L. Ed. 2d 144, 123 S. Ct. 1166 (2003) and Ewing v. California, 538 U.S. 11, 155 L. Ed. 2d 108, 123 S. Ct. 1179 (2003). In Lockyer, the Supreme Court extensively, reviewed its prior cases dealing with Eighth Amendment challenges to criminal sentences, and concluded that it has "not established a clear and consistent path for [*14] courts to follow [in determining whether a particular sentence for a term of years can violate the Eighth Amendment]." Lockyer, 538 U.S. at 72. The Court held that, [HN13]for the purposes of analyzing an Eighth Amendment claim under § 2254 (d) (1), the only clearly established governing legal principle is "a gross proportionality principle . . . the precise contours of [which] are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.

In Ewing, the Supreme Court rejected the defendant's claim that a sentence of 25 years to life for stealing three golf clubs was "grossly disproportionate" to the crime. The Court held that the "Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. at 1186-87. In other words, the Eighth Amendment "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Id. at 20 (internal citations omitted).

Applying these principles, the Court concludes that the Delaware Supreme Court's decision rejecting Petitioner's Eighth Amendment claim was neither [*15] contrary to, nor an unreasonable application of, the gross proportionality standard as articulated in Lockyer and Andrade. Petitioner's original 1996 sentence was for eight years incarceration at Level V, and his 2002 violation of probation sentence was for a total of 4 years 9 months at Level V incarceration. [HN14]In Delaware, after determining that a probationer violated the terms of his probation, the Superior Court is authorized to reimpose any portion of his previously suspended prison term, giving credit for all time previously served on the sentence at Level V incarceration. Gamble v. State, 728 A.2d 1171, 1172 (Del. 1999). The maximum permissible sentence for a probation violation does not depend upon whether the probation violation is technical or not; rather, the maximum permissible sentence depends upon the probationer's original sentence and the amount of time previously suspended and served at Level V. See, e.g., 11 Del. C. Ann. § 4334(c)(stating that [HN15]"if the violation is established, the court may . . .. require the probation violator to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence [*16] was suspended, may impose any sentence which might originally have been imposed"). Clearly, Petitioner's 2002 probation violation sentence does not exceed the Level V time originally imposed and suspended, nor does it exceed the authorized maximum statutory limits.

Additionally, Petitioner's violation of probation was established by competent evidence. He violated his probation on three separate occasions, and the record establishes that Petitioner's prior non-incarcerative sentences were not effective in preventing him from committing further violations of his probation. Viewing all of these factors together, the Court concludes that Petitioner's sentence is not so exceedingly rare or extreme to warrant a finding that his 2002 violation of probation sentence is "grossly disproportionate" to his probation violation. Thus, Petitioner's Eighth Amendment claim does not warrant federal habeas relief under § 2254(d)(1).

**B. Claim Two**

In his second claim, Petitioner contends that his probationer officer testified untruthfully during his probation violation hearing, thereby misleading the judge in violation of his Due Process rights under the Fourteenth Amendment. He contends that the following [*17] statement adversely affected the fairness of his probation violation proceeding:

> Mr. Mayfield has five young male victims, and it's my concern that with him running amuck using cocaine, which low-

ers his impulse control, that he's a danger to the community.

(D.I. 12, at 5.) Petitioner argues that, because the nature of his "technical" probation violations were drug related, this statement inappropriately referred to sexual offenses.

Petitioner presented this claim to the Delaware Supreme Court in his direct appeal, thereby exhausting state remedies. The Delaware Supreme Court denied this claim on the merits. Therefore, the Court must determine whether the Delaware Supreme Court's decision is contrary to, or an unreasonable application of, clearly established Federal law.

It is well-settled that [HN16]revocation of probation hearings are only subject to the minimum requirements of due process. *Black v. Romano,* 471 U.S. 606, 612, 85 L. Ed. 2d 636, 105 S. Ct. 2254 (1985); *United States v. Barnhart,* 980 F.2d 219, 222 (3d Cir. 1992). These requirements include: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of evidence against him; [*18] (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to evidence relied on and reasons for revoking probation. *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973) (citing *Morrissey v. Brewer,* 408 U.S. 471, 489, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972)).

Here, the probation officer's statement that Petitioner was on probation for sexual offenses committed against five teenage boys was accurate, as was her statement that Petitioner had previously failed at non-incarceration treatment. Petitioner himself admitted that he had used crack cocaine, and that he had "technically violated" his probation by testing positive for such use and by failing to report to his probation officer. Also significant is the fact that Petitioner does not allege that he was prevented from challenging the probation officer's statement, nor does he contend that the Superior Court judge was not neutral. Petitioner had written notice of the violation of probation hearing and was represented by counsel during the hearing. He also [*19] received a written order revoking his probation, from which he took an appeal.

Applying the applicable Supreme Court precedent to these facts, the Court concludes that the Delaware Supreme Court's denial of Petitioner's due process claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, this claim does not warrant federal habeas relief under § 2254(d)(1).

## C. Claim Three

In his third claim, Petitioner contends that his Due Process rights were violated because he never received written notification of the basis for the alleged probation violation. He did not present this claim to the Delaware Supreme Court in his direct appeal, and he also did not present the claim to the Superior Court in his first Rule 61 motion. Rather, Petitioner raised this issue to the Superior Court in his second Rule 61 motion. The Superior Court concluded that it was barred from reviewing the claim under Rule 61(i)(2) because Petitioner had failed to raise it in his first Rule 61 motion. *State v. Mayfield,* 2004 De. Super. LEXIS 27, 2004 WL 249588, at *4-5 (Del. Super. Ct. Jan. 29, 2004). Even though Petitioner appealed the Superior Court's denial of his [*20] second Rule 61 motion, he did not include his due process claim in his post-conviction appeal. As such, the Delaware Supreme Court held that Petitioner had waived the issue under *Somerville v. State,* 703 A.2d 629, 631 (Del. 1997). *Mayfield v. State,* 2004 Del. LEXIS 294, 2004 WL 1535776, at **1 (Del. July 19, 2004).

[HN17]If a state court refuses to address the merits of a petitioner's constitutional claim based upon an adequate and independent state procedural rule, the claim is considered to be procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 260, 103 L. Ed. 2d 308, 109 S. Ct. 1038 (1989). Here, by citing the *Somerville* decision as the basis for its waiver determination, the Delaware Supreme Court plainly stated that its decision rested on state law grounds. *Id.* at 263-265. The waiver rule in *Somerville* is an independent and adequate state ground precluding federal habeas review. *See McLaughlin v. Carroll,* 270 F. Supp. 2d 490, 512 (D. Del. 2003); *Carter v. Neal,* 910 F. Supp. 143, 151-52 (D. Del. 1995). Therefore, the Court cannot conduct federal habeas review of this claim unless Petitioner establishes cause [*21] for his procedural default and actual prejudice resulting therefrom, or that a miscarriage of justice will result if the Court refuses to review this claim. *Coleman v. Thompson,* 501 U.S. 722, 750-51, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991).

Petitioner does not allege, and the Court cannot discern, any reason for his failure to present this issue to the Delaware Supreme Court in his appeal of the probation violation proceeding or in his appeal of his second Rule 61 motion. In the absence of cause, the Court will not address the issue of actual prejudice.

Further, Petitioner has not attempted to demonstrate his actual innocence, nor has he presented any colorable evidence of his actual innocence. Thus, he has failed to demonstrate that a miscarriage of justice will occur if the Court declines to review this claim. Accordingly, the

2005 U.S. Dist. LEXIS 24137, *

Court will dismiss Petitioner's claim as procedurally barred.

### D. Claim Four

Petitioner's final claim is that his counsel provided ineffective assistance on direct appeal by moving to withdraw as his counsel under Delaware Supreme Court Rule 26(c). Petitioner did not raise this issue in either of his Rule 61 motions to the Superior Court, and he did not raise it in [*22] his post-conviction appeals. Thus, Respondent is correct that Petitioner did not exhaust state remedies for this claim.

The Court must excuse Petitioner's failure to exhaust state remedies, and treat the claim as exhausted, because Delaware Superior Court Criminal Rule 61(i)(2) would bar any further state court review of this claim. [1] Although deemed exhausted, the claim is still procedurally defaulted, thereby precluding federal habeas review of the claim absent a showing of cause and actual prejudice, or a miscarriage of justice.

> 1 Pursuant to Rule 61(i)(2), [HN18]"any ground for relief that was not asserted in a prior postconviction proceeding . . . is thereafter barred."

Petitioner does not provide any reason for his failure to present this claim to any state court. In the absence of cause, the Court need not address the issue of actual prejudice. Further, Petitioner does not assert his actual innocence, thus, he has failed to demonstrate that the Court should review this claim to prevent a miscarriage of justice. [*23] Accordingly, the Court will dismiss this claim as procedurally barred.

### V. CERTIFICATE OF APPEALABILITY

[HN19]When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484, 146 L. Ed. 2d 542, 120 S. Ct. 1595 (2000).

For these reasons, the Court concludes that none of Petitioner's habeas claims warrant federal habeas relief, and further, that reasonable jurists would not find these conclusions to be unreasonable. Consequently, the Court declines to issue a certificate of appealability.

### VI. CONCLUSION

For the reasons discussed, the Court will dismiss Petitioner's Petition.

An appropriate Order will be entered.

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2007, I electronically filed the attached documents

with the Clerk of Court using CM/ECF. I also hereby certify that on November 16, 2007, I have

mailed by United States Postal Service, the same documents to the following non-registered

participant:

> Glen W. Ducote
> No. 210611
> Delaware Correctional Center
> 1181 Paddock Road
> Smyrna, DE 19977

> Kevin M. Carroll
> Deputy Attorney General
> Department of Justice
> 820 N. French Street
> Wilmington, DE 19801
> (302) 577-8500
> Del. Bar. ID No. 4836
> Kevin.Carroll@state.de.us

Date:  September 12, 2007