## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| GLEN W. DUCOTE, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 07-374-GMS |
| | ) | |
| PERRY PHELPS, Warden,[1] and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents. | ) | |

---

Glen W. Ducote. *Pro se* petitioner.

Kevin M. Carroll, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

---

### MEMORANDUM OPINION

_____, 2010
Wilmington, Delaware

---

[1]Warden Perry Phelps replaced former Warden Thomas Carroll, an original party to this case.  *See* Fed. R. Civ. P. 25(d)(1).

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254 filed by petitioner Glen W. Ducote ("Ducote"). (D.I. 1.)  For the reasons discussed, the

court will deny the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Theresa Bare was romantically involved with Ducote for four to five years.  Bare and

Ducote had lived together in various residences in Chester, Pennsylvania, and had purchased a

home together.  After Bare broke up with Ducote, he continued to telephone her on a daily basis.

On May 4, 2003, Bare, who worked as a cleaning woman at the Woodlawn Apartments near

Route 141, Wilmington, Delaware, was cleaning a vacant apartment.  Ducote approached Bare

while she was getting some cleaning supplies out of her van, yelled obscenities at her, and

punched her in the face.  Ducote then pulled a steak knife out of the pocket of his sweatshirt and

stabbed her in the back and legs.  Ducote threatened to kill Bare unless she told him the address

of the woman with whom she had stayed after their break-up.  During the course of the attack,

Ducote stabbed Bare multiple times and knocked her down repeatedly as she attempted to stand

up.  He also threatened to kill her.  *Ducote v. State*, 873 A.2d 1099 (Table), 2005 WL 1200859,

at *1-2 (Del. May 18, 2005).

Following the attack, Ducote bound and gagged Bare with some of her cleaning rags, put

her in the van, and drove out of the apartment complex toward Route 141.  As Ducote stopped

and waited for oncoming traffic to pass, Bare managed to reach a door handle and jump out of

the van.  As the van started moving again, one of the rags got caught on the outside door latch,

forcing Bare to run alongside the van.  With full knowledge of Bare's predicament, Ducote drove

1

faster and faster. Finally, Bare fell under the van, resulting in injuries to her chest, leg, and hand. She managed to run to a nearby residence, where the occupant called 911. *Id.*

Bare was transported to Christiana Hospital by paramedics. Her heartbeat and blood pressure were alarmingly low and a chest tube needed to be inserted for a collapsed lung. She had surgery to stop her internal bleeding and to repair a tear in her spleen. Doctors also determined that Bare had suffered a broken wrist, a broken ankle and a broken shoulder. She also sustained lacerations and bruising to her face, neck and hand. *Id.*

Bare testified during Ducote's three-day jury trial in January 2004 and described the attack. While walking from the witness stand after she finished her testimony, Bare hugged a social worker employed by the New Castle County police as a victim assistant. No words were spoken by either Bare or the social worker at the time of the hug. After the jury had left the courtroom, the judge called the social worker back in to the courtroom and strongly admonished her regarding the incident. At trial the following day, Ducote's public defender moved for a mistrial or, in the event the judge was unwilling to grant a mistrial, requested that a curative instruction be given to the jury. The judge denied the motion for a mistrial, but agreed to give a curative instruction. *Id.*

When the jury returned to the courtroom prior to counsel's closing arguments, the trial judge told the jury that it had been inappropriate for Bare and the social worker to hug each other in the courtroom, but that it was human nature to do so. He also stated that the incident should have no bearing on their decision in the case and that they should base their verdict solely on the evidence presented. In addition, prior to delivering the regular jury instructions, the judge reiterated his comment that the jury should rely solely and exclusively on the evidence in the case

2

in reaching a decision, and should not permit passion, prejudice, bias or sympathy to influence them in any manner whatsoever. *Id.*

On January 15, 2004, the jury convicted Ducote of attempted first degree murder, first degree kidnaping, possession of a deadly weapon during the commission of a felony, and possession of a deadly weapon by a person prohibited. The Superior Court sentenced Ducote as an habitual offender to life imprisonment. Ducote filed a notice of appeal, and moved to represent himself. After conducting a hearing, the Superior Court granted Ducote's motion for self-representation. Thereafter, the Delaware Supreme Court affirmed Ducote's convictions and sentences. *Id.*

In June 2006, Ducote filed a *pro se* motion for state post-conviction relief pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that judgment. *State v. Ducote,* 2006 WL 3872845 (Del. Super. Ct. Dec. 29, 2006); *Ducote v. State*, 925 A.2d 503 (Table), 2007 WL 1301085 (Del. May 4, 2007).

Ducote timely filed the pending federal habeas petition, and the State filed an answer asking the court to deny the petition. (D.I. 1; D.I. 14.) Thereafter, Ducote filed a motion to add three "new grounds." (D.I. 26.) The court granted the motion to incorporate grounds eight and nine into claims five and six because they merely amplified those claims, but denied the motion to add ground ten because it was an entirely new claim that did not supplement or amplify any of the grounds raised in the original petition. (D.I. 30.)

3

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

"to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted).  Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the
>       applicant.

4

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(internal citations omitted).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501

U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To

demonstrate cause for a procedural default, a petitioner must show that "some objective factor

external to the defense impeded counsel's efforts to comply with the State's procedural rule."

*Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must

show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his

entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner

demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.

*Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir.

2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation

has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at

496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United*

*States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to

find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24

(3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court

adjudicated the federal claim on the merits, the court can only grant habeas relief if the state

court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in

6

light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of

28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its

substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115

(3d Cir. 2009). In determining whether the Federal law is "clearly established," the focus is on

Supreme Court holdings, rather than dicta, that were clearly established at the time of the

pertinent state court decision. *See Greene v. Palakovich*, 606 F.3d 85 (2010).

When reviewing a § 2254 petition, a federal court must presume the state court's

determinations of factual issues are correct, unless the petitioner presents clear and convincing

evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues,

whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This

presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v.

Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## III. DISCUSSION

Ducote's petition asserts the following seven claims for relief: (1) the Superior Court

erred by not declaring a mistrial when Bare hugged a social worker after leaving the witness

stand; (2) trial counsel provided ineffective assistance by filing a no-merit appellate brief

pursuant to Delaware Supreme Court Rule 26(c) instead of filing a brief raising the arguable

issues Ducote presented *pro se* on direct appeal; (3) the Superior Court erred by hearing

Ducote's motion for dismissal of counsel prior to trial; (4) the Superior Court erred by

7

sentencing Ducote to natural life under 11 Del. Code Ann. § 4214(a), which is actually stated in terms of years; (5) trial counsel provided ineffective assistance by failing to properly question the State's witnesses, by failing to call any witnesses for the defense, and by failing to put on any defense at all; (6) trial counsel provided ineffective assistance by failing to investigate Ducote's case; and (7) trial counsel provided ineffective assistance by conducting an improper jury *voir dire*.

### A. Claim one: trial court erred by denying Ducote's motion for mistrial

In claim one, Ducote contends that the trial court erred by failing to grant a mistrial when a social worker and Bare hugged in the courtroom after Bare left the witness stand. Ducote presented this argument to the Delaware Supreme Court on direct appeal, asserting that "the trial judge failed to instruct his jury to disregard the emotional show by the State's star witness and denied him a fair trial." (D.I. 19, Appellant's Op. Br. in *Ducote v. State*, No. 118, 2004 at p.7.) After reviewing the claim on its merits, the Delaware Supreme Court held that the Superior Court judge properly denied Ducote's motion for a mistrial. *Ducote*, 2005 WL 1200859, at *2. Given the Delaware Supreme Court's adjudication of claim one, the court must determine whether the Delaware Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law.

It is well-settled that certain government-sponsored courtroom practices are so inherently prejudicial that they deprive the defendant of a fair trial, unless the practice at issue can be justified by an essential state policy or interest specific to the defendant at trial.[2] *Carey v.*

---

[2]Government-sponsored courtroom conduct is considered to be inherently prejudicial when "an unacceptable risk is presented of impermissible factors coming into play." *Musladin*, 549 U.S. at 75. To date, the Supreme Court has applied the "inherent prejudice" test to

*Musladin*, 549 U.S. 70, 72 (2006). However, the Supreme Court has acknowledged that there is no clearly established Supreme Court precedent regarding the effect of spectator courtroom behavior on a defendant's fair trial rights, and that the "inherent prejudice" test is therefore inapplicable to spectator conduct. *Id.* at 76-77. Here, the record provides no indication that the State required the social worker's presence at Ductoe's trial. Operating on the presumption that the social worker was a voluntary spectator, and given the absence of clearly established Supreme Court precedent governing the effect of a spectator's conduct on a defendant's due process rights, the court cannot conclude that the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Federal law.[3] *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

Nevertheless, even if the court were to presume that the social worker's conduct was "government sponsored," the court would still conclude that claim one does not warrant habeas relief. Although the Sixth Amendment guarantees a criminal defendant the right to a fair trial by

---

government-sponsored practices such as requiring defendants to attend trial while shackled or while in prison garb. *Id.*

[3]Several Federal circuit courts have held that the absence of clearly established Federal law is dispositive under § 2254(d)(1). *See House v. Hatch*, 527 F.2d 1010, 1018 (10th Cir. 2008); *Baird v. Davis*, 388 F.3d 1110, 1115 (7th Cir. 2004); *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003); *Alvarado v. Hill*, 252 F.3d 1066, 1068-69 (9th Cir. 2001). Although the Third Circuit has not expressly stated that the absence of clearly established Federal law is "dispositive" of both the "contrary to" and "unreasonable application of" inquiries required by § 2254(d)(1), the Third Circuit appears to follow the reasoning expressed in the aforementioned decisions of its sister courts. *See Thomas v. Carroll*, 581 F.3d 118, 127 (3d Cir. 2009)("Given the weighty interests on both sides of the question-a defendant's interest in controlling his or her defense against the public's interest in fair and effective criminal trials-and the lack of guidance from the Supreme Court on this precise issue, we cannot conclude that the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.")

9

an impartial jury, not every outburst or disruption warrants a new trial. *Morgan v. Illinois*, 504

U.S. 719, 727 (1992). "Due process means a jury capable and willing to decide the case solely

on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and

to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209,

217 (1982). The pertinent inquiry is whether the outburst at issue "so infected the trial with

unfairness" that there was discernible prejudice to the defendant. *See United States v. Olano*,

507 U.S. 725, 739 (1993).

In Delaware, the decision to grant or deny a mistrial due to an emotional outburst by a

witness or trial spectator rests within the discretion of the trial court. *See Taylor v. State*, 690

A.2d 933 (Del. 1997). Delaware trial courts consider the following factors when determining

whether a witness' emotional display has prejudiced the defendant such that a mistrial is

warranted: (1) the nature, persistency, and frequency of the emotional display; (2) whether the

outburst created a likelihood that the jury would be misled or prejudiced; and (3) the curative or

mitigating action taken by the trial judge. *Id.* at 935. Applying this test in Ducote's case, the

Delaware Supreme Court found that the emotional display between Bare and the social worker

was inappropriate, but still held that the Superior Court judge properly denied Ducote's motion

for a mistrial because

> the inappropriate behavior occurred only once and when the jury was leaving the
> courtroom. Immediately after the incident, the judge strongly admonished the social
> worker not to engage in any such behavior in the future. He also gave the jury two
> specific cautionary instructions with respect to the incident, one the next morning and the
> other immediately prior to reading the regular jury instructions. There is little chance that
> the jury would have been misled or prejudiced in such circumstances. Finally, this was
> not a close case. The evidence against Ducote was overwhelming.

*Ducote*, 2005 WL 1200859, at *2. In short, the Delaware Supreme Court held that Ducote was

10

not deprived of a fair trial by the jury witnessing the hug between Bare and the social worker.

After reviewing the circumstances of this case within the framework established by the Supreme Court precedent applicable to "government sponsored" conduct, the court concludes that claim one does not warrant habeas relief. The display of emotion was a brief temporal event and was not repeated at any other time during the trial. The trial judge gave the jury two cautionary instructions about the incident, explaining that the hug should have no bearing on the jury's decision.[4] As noted by the Delaware Supreme Court, the case was not close; the medical evidence of Bare's injuries was overwhelming, Bare knew her assailant, and Ducote's mother testified that her son told her on the day of the attack that he had hurt Bare badly. Indeed, during the opening and closing statements, Ducote's attorney conceded that his client had stabbed Bare, but argued that Ducote had never intended to kill her. Given this record, the court cannot find any discernible prejudice stemming from the social worker's hug. Accordingly, the court will deny claim one.

### B. Claim two: defense counsel erred by filing a "no-merit" appellate brief

Ducote contends that defense counsel provided ineffective assistance on appeal by filing a no merit brief pursuant to Delaware Supreme Court Rule 26(c). According to Ducote, counsel should have filed a brief asserting the "arguable issues" that Ducote presented while proceeding *pro se* on direct appeal.

After reviewing the record, the court concurs with the State's conclusion that Ducote has

---

[4]Specifically, the judge instructed that "you have to base your decision on the evidence, what occurred in the witness stand, and so to the extent any of you may have seen the interaction, please ignore it, and place the verdict on the evidence, not the emotional part of the testimony." (D.I. 19, State's Ans. Br. in *Ducote v. State*, No. 118,2004, at p. 9.)

not satisfied the "fair presentation" requirement of the exhaustion doctrine with respect to this claim. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989)(holding that a petitioner does not exhaust state remedies by presenting a claim to the state courts in an improper procedural fashion). In Delaware, an ineffective assistance claim must first be raised in a Rule 61 motion to the Superior Court, and then presented to the Delaware Supreme Court on post-conviction appeal; it cannot be raised for the first time on direct appeal. *Kendall v. Attorney General of Delaware*, 2002 WL 531221, at *4 n.2 (D. Del. Mar. 26, 2002)(explaining that, in Delaware, an ineffective assistance of counsel claim must first be raised in a post-conviction motion pursuant to Superior Court Criminal Rule 61). Here, Ducote only presented claim two to the Delaware Supreme Court on direct appeal, and never on post-conviction appeal, thereby precluding the state courts from considering the claim on its merits. As a result, the claim is unexhausted.

At this juncture, any attempt by Ducote to assert claim two in a new Rule 61 proceeding would be barred by Rule 61(i)(2) as repetitive. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding). Consequently, the court must treat the claim as exhausted but procedurally defaulted, thereby precluding habeas review on the merits absent a showing of cause and prejudice.

Ducote has not asserted, and the court cannot discern, any cause for his default of claim two. Given Ducote's failure to establish cause, the court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Ducute's default because he has not provided any new reliable evidence of his actual innocence. Accordingly, the court will dismiss claim two as procedurally barred.

**D. Claim three: trial court erred by not addressing Ducote's motion to dismiss counsel prior to the start of his trial**

Prior to trial, Ducote filed a motion asking the trial court to dismiss counsel and appoint new counsel. (D.I. 19, Del. Super. Ct. Crim. Dkt., Entry No. 11;  D.I. 19, Appellant's App. to Op. Br. in *Ducote v. State*, No.118,2004, Motion .)  The motion was summarily denied by a Superior Court judge other than the judge who presided over Ducote's trial. (D.I. 19, Del. Super. Ct. Crim. Dkt. Entry No. 14)  On direct appeal, one of the arguments presented by Ducote was titled "The trial court erred in not hearing appellant's motion for dismissal of counsel before trial." (D.I. 19, Appellant's Op. Br. in *Ducote v. State*, No.118,2004)  One sentence of the aforementioned argument asserted that "the trial court failed to rule on the motion or even consider the motion for the record, thereby forcing appellant to trial without benefit of an advocate to support his defense," but the body of the argument asserted that trial counsel had totally failed to advocate for him in violation of *United States v. Cronic*, 468 U.S. 648 (1984). The Delaware Supreme Court interpreted Ducote's claim as one alleging ineffective assistance of counsel, and declined to consider the matter on direct appeal. *See Ducote*, 2005 WL 1200859, at *3.  Ducote did not present the issue of the trial court's "failure" to consider his motion to dismiss counsel or the *Cronic* argument in his Rule 61 motion or post-conviction appeal.

Now, in claim three, Ducote succinctly asserts "the trial court erred in hearing appellant's motion for dismissal of counsel before trial." (D.I. 1, at p. 8.)  To the extent Ducote's argument is that the judge who presided over his trial should have considered his motion to dismiss counsel, rather than some other judge, the claim asserts a state law issue which does not provide a proper basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991). However, after liberally reading Ducote's statement in conjunction with the documents Ducote

13

filed in his state court proceedings, the court believes the actual premise of Ducote's instant

argument to be that the trial court violated his Sixth Amendment right to counsel by *summarily*

*denying* his pre-trial motion to dismiss counsel, not that the trial court erred in *hearing or*

*considering* that motion prior to trial. To the extent this one sentence claim asserts at least a

portion of the claim Ducote raised on direct appeal, it is exhausted. Considering that the

Delaware Supreme Court did not consider the claim as alleging a constitutional violation

stemming from the trial court's summary dismissal of his motion for substitute counsel, but

rather, as a substantive ineffective assistance of counsel claim,[5] the court will review this

particular interpretation of claim three *de novo*.[6] *See Holloway v. Horn*, 355 F.3d 707, 718-19

(3d Cir. 2004).

"[W]hile the right to select and be represented by one's preferred attorney is

comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an

effective advocate for each criminal defendant rather than to ensure that a defendant will

inexorably be represented by the lawyer he prefers." *Wheat v. United States*, 486 U.S. 153, 159

(1988). Consequently, the Sixth Amendment right to counsel does not guarantee a meaningful

relationship between a defendant and counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). In

---

[5]To the extent claim three should be interpreted as alleging a substantive ineffective assistance of counsel claim, the court concurs with the State's assertion that Ducote procedurally defaulted this issue by presenting it on direct appeal, rather than in a Rule 61 proceeding and post-conviction appeal. (D.I. 14, at pp. 12-3.) Given Ducote's failure to present any cause or prejudice for that default, the court concludes that it is procedurally barred from reviewing the merits of this particular interpretation of claim three.

[6]*De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

turn, although a defendant's right to counsel includes the right to counsel of one's choice, the "right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).

Extending the foregoing principles, the Supreme Court has recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, [] and against the demands of its calendar." *Id.* at 152. Nevertheless, "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Slappy*, 461 U.S. at 11-14. The Supreme Court has not articulated what constitutes "an unreasoning and arbitrary insistence upon expeditiousness," nor has it set forth any requirement regarding the extent of a trial court's inquiry into a defendant's request for substitution of counsel. In the absence of a more definitive statement from the Supreme Court, the court turns to Third Circuit precedent for guidance in how to apply the aforementioned principles.

To begin, it is well-settled that a trial court in the Third Circuit is not required to engage in a formal inquiry or colloquy regarding a defendant's request for substitution of counsel when the defendant has been given an opportunity to provide the court with the reason for his dissatisfaction with counsel, or the reasons for the request and rationale for the decision are apparent from the record. *United States v. Leveto,* 540 F.3d 200, 208 (3d Cir. 2008); *United States v. Welty*, 674 F.2d 185, 190 (3d Cir. 1982). All that is required is that the trial court engage in some inquiry to ascertain the reasons for the defendant's dissatisfaction to determine if good cause for substitution actually exists. *See United States v. Peppers*, 302 F.3d 120, 133 n.12 (3d Cir. 2002). In turn, the Third Circuit Court of Appeals has defined "good cause" for

substitution of counsel as a "conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *United States v. Goldberg,* 67 F.3d 1092, 1098 (3d Cir. 1995). A disagreement between the defendant and defense counsel over legal strategy does not constitute good cause requiring substitution of counsel, nor does a defendant's unilateral decision not to cooperate with court appointed counsel. *Id.* at 1098-99; *United States v. Gibbs*, 190 F.3d 188, 207 n.10 (3d Cir. 1999). A defendant's mere dissatisfaction with counsel also does not warrant substitution of counsel. *See United States v. Moses,* 58 Fed. Appx. 549, 555 (3d Cir. Feb. 3, 2003).

Viewing claim three within the preceding framework, the court concludes that the claim does not warrant habeas relief. First, the record demonstrates that Ducote was afforded an opportunity to state his reasons for asking for substitute counsel, via the statements contained in his motion to dismiss counsel and in the letters to defense counsel that he filed with the trial court one month prior to filing said motion. Second, although the Superior Court summarily denied the motion to dismiss on January 7, 2004 without explanation and without providing a hearing or formal inquiry, both the *pro se* motion to dismiss and the letters provided the trial court with sufficient reasons for Ducote's substitute counsel request. For instance, Ducote's *pro se* motion to dismiss counsel asserted that defense counsel had not taken an interest in Ducote's case; suggested that defense counsel had not promptly advised Petitioner about his rights; and noted that Ducote had filed a motion with the "Board of Disciplinary Counsel and State Bar Association." (D.I. 41.) In turn, the five letters Ducote filed with the Superior Court contained numerous suggestions as to how counsel should conduct his defense, as well as numerous requests for counsel to file a motion to dismiss the charges and file a motion for bail reduction.

*Id.* Even when liberally construed, the complaints raised in Ducote's letters and motion fail to

demonstrate a "conflict of interest, a complete breakdown of communication, or an irreconcilable

conflict with the attorney." Rather, the statements contained therein amount to nothing more

than an expression of Ducote's disagreement with defense counsel over legal strategy, and

therefore, fail to constitute good cause for substitution of counsel.[7]

In sum, even if Ducote was not represented by his counsel of choice, his argument fails to

establish that he was denied representation by an effective advocate when the trial court

summarily denied his motion to dismiss and substitute counsel. Accordingly, the court will deny

claim three.

### E. Claim four: Ducote was improperly sentenced as an habitual offender

It is well settled that habeas claims based on errors of state law are not cognizable on

federal habeas review. *Estelle*, 502 U.S. at 67-8. In claim four, Ducote alleges that he was

improperly sentenced under 11 Del. Code Ann. § 4214(a) to life imprisonment as an habitual

offender, because his prior convictions consisted of two non-violent felonies and two violent

felonies. This argument is based solely on state law. Therefore, the court will deny claim four

because it fails to present a proper basis for federal habeas relief.

### F. Claims five, six, and seven: ineffective assistance of counsel

In claim five, Ducote contends that counsel failed to properly question the State's

witnesses and also failed to call any witnesses. In claim six, Ducote alleges that counsel failed to

---

[7]Additionally, the court notes that counsel actually did file two pretrial motions on
Ducote's behalf, including a motion for reduction of bail. And, despite Ducote's evident
disagreement with defense counsel, defense counsel's willingness to continue to represent
Ducote undermines any assertion of an irreconcilable breakdown of communication.

investigate his case. And finally, in claim seven, Ducote argues that counsel failed to properly conduct *voir dire*.

The Superior Court denied all three of Ducote's ineffective assistance of counsel claims for being vague and conclusory, explaining that they failed "to provide more than mere speculation." *Ducote*, 2006 Wl 3872845, at *2. The Superior Court also denied the claims because Ducote failed to show the requisite prejudice under *Strickland*.

On post-conviction appeal, the Delaware Supreme Court affirmed the Superior Court's decision. The Delaware Supreme Court noted Ducote's lack of specificity, as well as his failure to demonstrate prejudice, and then explicitly held that the three claims lacked merit. *Ducote*, 2007 WL 1301085, at *1. Given the Delaware Supreme Court's consideration of Ducote's complaints, the court can only grant habeas relief if the Delaware Supreme Court's denial of the ineffective assistance of counsel claims was contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to

18

sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Pursuant to *Strickland*, a petitioner alleging ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and "affirmatively" prove prejudice. *Strickland*, 466 U.S. at 690, 693. Therefore, as an initial matter, the court concludes that the Delaware Supreme Court's rejection of the instant three claims for lack of specificity was not contrary to *Strickland*.[8] *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court also concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in denying the claims for lack of prejudice. For instance, contrary to Ducote's assertion in claim five, defense counsel did cross-examine the State's witnesses, except for the police officers. In turn, although Ducote contends that counsel should have called a medical expert to rebut the State's contention that the severity of Bare's injuries demonstrated his prerequisite intent, or that counsel should have called a medical expert to challenge the issue of

---

[8]To the extent that the Delaware Supreme Court proceeded one step further to analyze the instant three claims within the *Strickland* framework, its decision also was not contrary to clearly established Federal law.

19

causation,[9] Ducote has not identified any expert who was willing and able to provide such testimony. Consequently, Ducote has failed to demonstrate the requisite *Strickland* prejudice necessary for him to prevail on claim five. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3dCir. 1991); *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989).

As for Ducote's allegation in claim six that counsel was ineffective for failing to investigate Ducote's theory that Bare was involved in a plot that led to his being shot three times prior to the incident at issue, Ducote has not demonstrated a reasonable probability that any testimony regarding this alleged plot would have aided his defense or that it would have changed the outcome of his trial. Indeed, as noted in defense counsel's Rule 61 affidavit, there was a strong possibility that mentioning this plot at trial would have hindered Ducote's defense because it would have provided a motive for Ducote to kill Bare. (D.I. 21, Affidavit of James Brendan O'Neill, at p. 5.) Consequently, the court concludes that Ducote has failed to satisfy the prejudice prong of *Strickland* with respect to the allegations contained in claim six.

And finally, as for Ducote's contention in claim seven that counsel did not properly conduct *voir dire*, the record reveals that defense counsel screened all the jurors for cause and that counsel exercised all six of the defense's peremptory challenges. (D.I. 21, Affidavit of James Brendan O'Neill, at p. 5.) Simply stated, Ducote has failed to demonstrate prejudice in this instance because he has not identified which jurors were biased or why they were biased, or the questions that counsel should have posed to potential jurors during *voir dire*.

Based on the aforementioned deficiencies in Ducote's claims, the court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in denying claims five, six, or

---

[9]*See* (D.I. 26, Grounds 8 & 9.)

seven. Accordingly, these three claims do not warrant relief.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Ducote's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Ducote's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

21